UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LEROY BROWN,                                    :

                Petitioner,          :          07 Civ.  8672 (RMB) (AJP)

        -against-                     :          **REPORT AND RECOMMENDATION**

KENNETH S. PERLMAN, Superintendent,             :
Mid-State Correctional Facility,

                                 :

             Respondent.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Richard M. Berman, United States District Judge:**

          Pro se petitioner Leroy Brown seeks a writ of habeas corpus from his April 2, 2004

conviction, after a jury trial in Supreme Court, New York County, of second degree assault and

sentence of five years imprisonment.  (Dkt. No. 1: Pet. ¶¶ 1-5; see Dkt. No. 6: State Br. at 4.)

Brown's habeas petition asserts that:  (1) "there occurred prosecutorial misconduct"[1] (Pet. ¶ 13);

(2) the trial court erred by not setting aside the verdict due to juror misconduct[2] (Pet. ¶ 13); (3) the

---

[1]      On direct appeal, Brown claimed that the prosecutor engaged in misconduct when he:
(1) introduced altered hospital records into evidence; (2) introduced a corkscrew into
evidence that was not the corkscrew recovered from Brown upon his arrest; (3) did not use
scientific tests to prove Brown used the weapon; and (4) failed to charge Brown with
weapons possession.  (Dkt. No. 8: Danzig Aff. Ex. B: Brown Pro Se Supp. 1st Dep't Br. at
5-10.)

[2]      Brown refers to this issue in his habeas petition as "the jury misconduct issue."  (Pet. ¶ 13.)
Brown raised the claim in his counseled direct appeal to the First Department.  (Danzig Aff.
                                                 (continued...)

trial court erred in proceeding with the post-trial juror misconduct hearing without defense counsel present (Pet. ¶ 13); (4) the trial court "erred in not submitting the lesser-included offense of assault [in the] third degree" (Pet. ¶ 13); (5) Brown was denied effective assistance of appellate counsel when appellate counsel did not raise "all the more meritorious claims of prejudicial errors that rendered the verdict unreliable"[3/] (Pet. ¶ 13, incorporating Danzig Aff. Ex. G: Brown Pro Se Coram Nobis Br. at 2); (6) Brown was denied effective assistance of appellate counsel for not arguing that trial counsel was ineffective for failing to object to all the errors set forth in Brown's coram nobis petition (Pet. ¶ 13, incorporating Brown Pro Se Coram Nobis Br. at 4-31); and (7) "[t]rial counsel was required to 'object' to the errors complained of in the writ of error coram nobis" (Pet. ¶ 13, incorporating Brown Pro Se Coram Nobis Br. at 4-31).

      For the reasons set forth below, Brown's habeas petition should be <u>DENIED</u>.

<b><u>FACTS</u></b>

      Leroy Brown's conviction arose from the July 9, 2003 assault of Eric Daniels on 150th Street between Seventh and Eighth Avenues. (Dkt. No. 7: 3/9/04 Trial Transcript ["Tr."], Prosecution Opening: Tr. 17-19.) Brown and his accomplice Jesse Dickson[4/] accosted Daniels,

---

[2/]      (...continued)
      Ex. A: Brown 1st Dep't Br. at 27-32.)

[3/]      Brown asserts that appellate counsel should have raised the following claims: "prejudicial and erroneous instructions given by the trial court on 'reasonable dou[b]t,' compromise verdict, double jeopardy, erroneous instructions on 'intent,' coupled with the burden shifting instructions on reasonable doubt, as well as improper admission of hospital reports." (Pet. ¶ 13.)

[4/]      Prior to Brown's trial, Dickson pled guilty to third degree robbery. (Dkt. No. 8: Danzig Aff.
      (continued...)

3

Brown punched Daniels in the chin with a sharp object, and they took $200-250 from his pocket. (Prosecution Opening: Tr. 18-19.) Daniels reported what happened to the police, drove around with them, and identified Brown and Dickson as the assailants. (Prosecution Opening: Tr. 19.) The police recovered a corkscrew from Brown, who admitted to punching Daniels. (Prosecution Opening: Tr. 19-20.)

**March 8, 2004 Voir Dire Proceedings**

Jury selection for Brown's trial occurred on March 8, 2004 before Justice Edward McLaughlin. (Dkt. No. 7: 3/8/04 Voir Dire Transcript ["VD"].)

Justice McLaughlin explained reasonable doubt and the burden of proof to the prospective jurors, as follows:

> You have to understand and accept that the most fundamental principal of American criminal law is that the only person in the U.S. courtroom who has the burden or the job of proving or trying to prove anything is the person who represents the government. . . . So under the system you have created, the People's obligation is to prove a case to a standard known as beyond a reasonable doubt, if there is going to be a conviction. If they fail, there is not a conviction.
>
> The accused, under the system we've all created, is presumed to be innocent. Since somebody is presumed innocent at his or her trial, they don't have to prove anything. The starting point is their innocence. Someone who wants to remove that presumption has the burden of proving the case to a standard known as beyond a reasonable doubt. For there to be a verdict, the 12 voting jurors have to be unanimous that the case has either been proven or not been proven. To emphasize how little an accused has to do, he or she doesn't have to testify. The person representing him, the lawyer, or representing her, doesn't even have to question one or any of the witnesses testifying against him. They can look over at the prosecutor

---

[4/]    (...continued)
Ex. C: State 1st Dep't Opp. Br. at n.1; see also Dkt. No. 7: 10/24/03 Huntley/Wade Hearing Tr. at 2-4; Dkt. No. 7: 3/8/04 Voir Dire Tr. ["VD"] at 4-6.)

4

and basically say, you brought the charges, prove them, if you can.  I am not doing anything.

That's the outline of how we have decided to resolve criminal cases. . . .

(VD 19-20; see also VD 103-06.)

During voir dire, Justice McLaughlin asked potential jurors if any of them knew, "have heard of or seen" A.D.A. Peter Hinckley.  (VD 33.)  Justice McLaughlin, unfortunately, did not ask the venirepersons if they knew defense counsel, Frank Bari.  (VD 33; see generally VD 1-117.)[5/]  Mr. Bari introduced himself to the venire when he began his series of questions.  (VD 102.)

Justice McLaughlin further told the prospective jurors:

In some cases, if a crime is committed, it's committed in front of a lot of people.  In some cases, it's not committed, if it happened, it's not committed in front of any more than one person.  So sometimes there is one witness.  The law says that depending on the nature of the proof, as it's viewed by a jury, there can be a conviction based simply on the testimony of one witness if one person's testimony is sufficiently credible and persuasive that that one person's testimony allows the prosecution to meet their burden of proving beyond a reasonable doubt.

In this case, that principle will be up to you, is whatever you're exposed to hear sufficient to permit the People to meet their burden of proof beyond a reasonable doubt based on one witness. . . . So I need to know whether anybody has a potential conflict between a personal, religious belief and New York law's law on the issue of one witness identification.

---

[5/]     Justice McLaughlin did, however, ask the potential jurors the "catch-all" question of whether there was "anything that I haven't asked about or which is not on the questionnaire that in any way affects your ability to decide the case. . . . You have to take that opportunity to tell us anything that in any way could affect your ability to decide the case."  (VD 41.)  And in questioning potential juror Salerno, Justice McLaughlin's last question was:  "Is there anything else we should know?" to which Salerno responded:  "No."  (VD 58-59.)

5

(VD 35-36.)  The prosecutor followed up on the single witness issue in questioning the venire.  (VD 94-97.)

**Trial**

   Brown's trial took place on March 9, 2004, with deliberations carrying over to March 10.

   Before counsels' opening statements began, Justice McLaughlin told the jury the following:

> Since this case, like ever[y] other case, is about one thing, and that is whether the prosecution can meet a standard of proof, and since I am not going to explain to you what that standard of proof is until almost the last thing, I say to you in a real sense you are not in [a] position to try to figure out how the case is going, because without that definition you have no idea where the case has to be, if there is going to be a conviction.

(Preliminary Instructions: Tr. 14.)  Defense attorney Bari did not object to this comment.  (Tr. 14-17.)

   **The Prosecution Case**

   The prosecution's main witness was the victim, Eric Daniels.  (Tr. 25.)  Daniels testified that on July 9, 2003, he picked up around $500 that his sister had been holding for him, and went shopping.  (Daniels: Tr. 32-33, 53.)  After shopping, he had "approximately two hundred to three hundred dollars" left.  (Daniels: Tr. 34, 43.) Dickson accosted Daniels on the street, and Brown came over and punched Daniels in the lower jaw with a sharp object.  (Daniels: Tr. 35-38, 55-56.) While Daniels did not know what the object was, he did "know it was a sharp object, because it

pierced [his] lower lip completely," causing a hole.  (Daniels: Tr. 38, 44-45.)[6]  Dickson and Brown

ripped Daniels' pants pocket, rifled through it, and took Daniels' money.  (Daniels: Tr. 39-41, 43, 65-

67.)

> After a short delay, Daniels went to the 32nd Precinct to report the crime; the police

drove him around the neighborhood to see if he spotted his assailants.  (Daniels: Tr. 46-47, 68, 70.)

On 146th Street between Seventh and Eighth Avenues, Daniels spotted them, said "Bingo," and the

police arrested Brown and Dickson.  (Daniels: Tr. 47-48, 74-76.)

> Police Officer Ronald Martiny testified that when Daniels came to the police station,

he still was bleeding from a "small puncture wound to his lip area, lower lip area.  It went through

his lip and into his gum."  (Martiny: Tr. 90, 111-13.)  Daniels described the two perpetrators to the

police, and they conducted a canvas of the neighborhood with Daniels in the police car.  (Martiny:

Tr. 91-92, 114.)  At around 2 a.m., Daniels spotted Brown and Dickson, and the police arrested them.

(Martiny: Tr. 92-94, 115-16.)  Brown and Dickson "seem[ed] high on drugs."  (Martiny: Tr. 93.)

Officer Martiny "recovered a corkscrew from [Brown's] pants pockets and fifteen dollars in

currency."  (Martiny: Tr. 93, 119.)

> Around eight a.m., Officer Martiny read Brown his Miranda rights.  (Martiny: Tr. 94-

99, 117.)  Brown first said he never had a corkscrew, but when Officer Martiny showed him the

corkscrew that he had recovered from Brown, Brown "stated that he forgot he had the corkscrew in

---

[6]    Later that night, Daniels went to the hospital and received three stitches.  (Daniels: Tr. 48.)
On cross-examination, defense counsel offered the hospital records, and they were admitted
in evidence with the prosecution's consent.  (Tr. 82-83.)

his pocket." (Martiny: Tr. 99, 102.) In a second statement, Brown said "that he chased the victim and that he punched him in the face, but he didn't have a corkscrew and that he punched him with his right hand." (Martiny: Tr. 104.)

Officer Martiny identified the corkscrew that he recovered from Brown, from the voucher number and his initials on the corkscrew. (Martiny: Tr. 104-06, 119.) On voir dire by the defense, Officer Martiny reiterated that he personally recovered the corkscrew from Brown's pants pocket. (Martiny: Tr. 106-07.) Defense counsel pointed out that there did not appear to be any blood on the corkscrew, and Officer Martiny said that he had not cleaned it. (Martiny: Tr. 107.) After Officer Martiny reiterated that the corkscrew looked "exactly the same" now as it did that evening, "except [he] put [his] initials on it," Justice McLaughlin allowed the corkscrew into evidence over the defense's objection. (Martiny: Tr. 107-08.)

Brown's grand jury testimony was read to the jury without objection. (Tr. 123-50.) Brown told the grand jury that he did not use a weapon, that "all this was, was a fight. I didn't do anything to him. I didn't rob nobody." (Brown Grand Jury: Tr. 128, 147.) Brown added, "I punched him in the face, and then he ran. That was it." (Brown Grand Jury: Tr. 133, 134.) Brown claimed that the police coerced him to say certain things. (Brown Grand Jury: Tr. 135-37.) Brown said he carried the corkscrew "for [him] to make money with," explaining that "it's not just a corkscrew. It is a knife, corkscrew, can opener" that he uses to open cans and bottles that he sells at the beach. (Brown Grand Jury: Tr. 146-47.)

The prosecution rested after the reading of Brown's grand jury testimony (see Tr. 150), and the defense rested without calling any witnesses. (Tr. 152.)

### The Charge Conference and The Jury Charge

At the charge conference, defense attorney Bari sought a lesser included assault charge, i.e., third degree assault without a weapon,[7] to which the prosecution objected. (Tr. 153.) Justice McLaughlin denied the request:

> THE COURT:  . . . Now, you want assault in the third degree under the fourth count, which would be that somehow one punch perforated the chin and hit the gum area by the teeth?
>
> MR. BARI:  Yes.
>
> THE COURT:  Denied.  Common human experience makes that an unreasonable view of the evidence.  There had to have been a sharp object.  It couldn't possibly have been a fingernail, because there's nothing in the record about a fingernail.

(Tr. 154.)  Justice McLaughlin charged the jury to consider first and second degree robbery, and second degree assault.  (Charge: Tr. 204-07.)

During the final jury instructions, Justice McLaughlin explained that the jury could draw inferences to establish facts:

> You have the power to draw reasonable and logical inferences from the testimony and the exhibits.  What does that mean?  It means that if you accept something that was testified to here, like the sky was blue, and then something flows or follows naturally and logically, you can conclude that that fact exists.  That is

---

[7]     Penal Law § 120.00 provides:

> A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or (2) He recklessly causes physical injury to another person; or (3) With criminal negligence, he causes physical injury to another person by means of a deadly weapon or a dangerous instrument.  Assault in the third degree is a class A misdemeanor.

called findings of fact by inference.  So if somebody testified the sky was blue, and you accept that, you could conclude that the sun was out even though nobody said a thing about the sun.  And even though theoretically in the history of the world at some time long ago the sky was blue and the sun was nowhere to be seen, because common human experience says when the sky is blue, the sun is out, so having accepted that the sky is blue, you could conclude the sun was out.  That is an inferred fact.

The law doesn't differentiate between the quality of facts, whether they are found by accepting directly what somebody says or whether it is by the process, the mental process of inferring.  Each is a fact, and they have equal weight.

(Charge: Tr. 186-87.)  Justice McLaughlin warned the jurors that while they could make reasonable inferences, they could not speculate.  (Charge: Tr. 187-88.)

Justice McLaughlin also instructed the jury on joint responsibility or acting in concert, explaining:

The in concert or joint responsibility theory of law says that if the prosecution can prove that, in this case two, supposedly two people were involved in an incident or incidents, that two people were of the same intent, that is, had the same conscious purpose, the same purpose, conscious aim or objective – People contend that there is a conscious aim or objective. They contend they have proven that each person intended to rob.  So the People have to, in order to invoke this in concert or joint responsibility theory of law, they have to establish two things beyond a reasonable doubt. One is mental, one is physical.  The mental is, both people whom they contend were involved in this robbery enterprise had to intend to forcibly steal property from Mr. Daniels.  If the People proved beyond a reasonable doubt that both Mr. Dickson and Mr. Brown intended to steal, that is, to forcibly steal property from Mr. Daniels, then the People would additionally have to prove that both of them, having that common intent, that conscious aim or objective to steal property, People have to prove that each person did something.  It doesn't have to be a lot, it doesn't have to be a little but does something designed to bring about the result that they both intended.

So in a case where one person supposedly exerted force and another person supposedly takes property, if the People have proven the mental and physical on the part of both, they are entitled to ask you to attribute the conduct of one to the other person.

You should understand with regard to this in concert idea that merely being present when another person commits a crime doesn't make you guilty. . . . The fact that you know somebody is committing a crime doesn't make you liable. . . . You are liable if you have intent to participate in, and you do something to fulfill the plan.

(Charge: Tr. 197-99.) Justice McLaughlin continued:

Intent. Intent is the secret operation of the mind. There is no machine that describes what the person is thinking or knowing during the course of an event, and a jury, even if they were standing present when an event supposedly took place, wouldn't have a printout of what the people involved in it were thinking.

So every fair system since time immemorial, since the fairest of the cave people's legal system has always had two components, mental and physical. Nobody is penalized in the United States for what they think or for what they do unthoughtfully, unreflectively. So there is coalescence of mental and and [sic] physical.

So how does a prosecutor go about attempting to prove what somebody thought? The law gives him or her two tools a jury can use, or reject these if you don't think they make any sense. Reject both or one or the other. If they make sense, use them.

Two principles are, a person intends the natural and logical consequences of what they do. The second is that you can detect and discern and know what a person intends by what they both do and say before, during and after an event.

If those make sense to you, that is fine. If they don't, reject them.

(Charge: Tr. 199-200.)

Concerning how the jury should determine whether the element of force was used in

committing the robbery, Justice McLaughlin explained:

Robbery is forcible stealing. There are three different theories of how you forcibly steal. One is possessing what is known as a dangerous instrument, either yourself or somebody with whom you are working.

A dangerous instrument is a household thing. The shoe on your foot, the handkerchief in your purse or your pockets, which, under the circumstances in which

it is used, threatened to be used or attempted to be used, can cause death or serious physical injury. It doesn't require that it does cause death or that it does cause serious physical injury, but it is a thing that, in a situation under which it is used, could cause those kinds of results. . . . [S]erious physical injury has a definition. Here it is: Capable of causing death or serious physical injury. That is, serious and protracted disfigurement, which includes scarring, protracted impairment of health or protracted loss or the impairment of the function of any bodily organ. . . .

(Charge: Tr. 203-05.)

Justice McLaughlin also charged the jury with the meaning of reasonable doubt:

The system places the burden exclusively on the People. The defendant is entitled to rest on the presumption of innocence in his favor until the presumption is so far outweighed by the evidence offered that you, as the jurors, are convinced of his guilt beyond a reasonable doubt. That phrase, "reasonable doubt," is the standard American criminal law, burden of proof. It has a meaning. A reasonable doubt means a doubt based on reason. It is a doubt of the head, not the heart. It is a doubt which remains after discussing the case in the jury room. It must, however, be a doubt based on the evidence or the absence of evidence in this case. In other words, it is not a theoretical exercise. It relates to what you were exposed to during the course of this trial.

A reasonable doubt[] means an actual doubt, a doubt you are conscious of having after reviewing in your mind all of the evidence and after giving careful consideration to all of it. If at that time you feel uncertain or not fully convinced that an accuse[d] is guilty, and if you believe that a reasonable person hearing the same evidence would not convict, that is a reasonable doubt, and the accused would be entitled to a verdict of not guilty accordingly. On the other hand, this does not mean that a reasonable doubt may be based upon a feeling, whim, a guess, surmise, speculation or conjecture, nor may it be considered a kind of fence or shield behind which a juror may seek to hide in order to avoid doing a painful or disagreeable duty.

Further, there is no obligation on the part of the People to establish the elements of a crime, which is the focus of the standard beyond a reasonable doubt, there is no obligation on the part of the People to establish the elements of the crime beyond all doubt, for that would be virtually impossible, given all the factors that relate to the testimony of human beings. However, the People's obligation is to prove an accused guilty beyond a reasonable doubt.

(Charge: Tr. 194-96; see also Charge: Tr. 208.)

H:\OPIN\BROWN-LEROY

12

In response to a jury question during deliberations, Justice McLaughlin explained reasonable doubt further in a re-instruction to the jury:

> Elements have to be proven beyond a reasonable doubt.  If they are, as you are considering each individual charge, the People prove the elements of the charge beyond a reasonable doubt, you have to convict.  If they fail, you have to acquit.
>
> . . . .
>
> I will now read two separate definitions of reasonable doubt.  The first one I read yesterday.  The other one is an approved alternative definition. . . . The concept is the same.  What I read yesterday is this:
>
> [Justice McLaughlin repeated the reasonable doubt charge he originally gave, quoted on page 11 above.]
>
> The other definition of reasonable doubt is this one:
>
> The law uses the term "prove beyond a reasonable doubt" to tell you how strong the evidence of guilt must be to permit a verdict of guilty.  The law recognizes that in dealing with human affairs there are very few things in this world that we know with absolute certainty.  Therefore, the law does not require the People to prove a defendant's guilt beyond all possible doubt.  On the other hand, it is not sufficient to prove that the defendant is probably guilty.  In a criminal case the proof of guilt must be stronger than that.  It must be beyond a reasonable doubt.
>
> Proof of guilt beyond a reasonable doubt is proof that leaves you so firmly convinced of the defendant's guilt that you have no reasonable doubt of the existence of any element of the crime or of the defendant's identity as the person who committed the crime.
>
> A reasonable doubt is an honest doubt of a defendant's guilt for which a reason exists based on the nature and quality of the evidence.  The doubt can arise from the evidence that was presented or from the lack of material and convincing evidence.
>
> A reasonable doubt is not a fanciful or imaginary doubt.  It is a doubt that a reasonable person, acting in a matter of this importance, would be likely to entertain because of the evidence or because of the lack of material and convincing evidence.

> In deciding whether or not the People have proven the defendant's guilt beyond a reasonable doubt, you should be guided solely by a full and fair evaluation of the evidence.  Your verdict must not rest on outlandish theory or baseless speculations, nor may your verdict be influenced in any way by bias, prejudice, sympathy or a desire to bring an end to your deliberations or to avoid unpleasant duty.

(Jury Re-Instruction: Tr. 223, 225-28.)

Defense counsel Bari did not object to any of Justice McLaughlin's jury instructions.

(Charge: Tr. 211; <u>see also</u> Tr. 228-33.)

**The Verdict**

The jury convicted Brown of second degree assault, but found him not guilty of robbery.  (Verdict: Tr. 233-35.)

**March 31, 2004 Post-Trial Juror Disqualification Hearing**

On March 31, 2004, Justice McLaughlin held a juror disqualification hearing to determine whether a juror in Brown's case had a prior connection with Brown's trial counsel Mr. Bari.  (Dkt. No. 7: 3/31/04 Juror Disqualification Hearing ["J.D.H."].)  One of the jurors had contacted A.D.A. Hinckley and said that juror Salerno had commented about defense attorney Bari.  (J.D.H. 2; <u>see</u> Dkt. No. 8: Danzig Aff. Ex. M: 3/15/04 A.D.A. Hinckley letter to Justice McLaughlin re Juror Salerno.)  Justice McLaughlin first spoke to the juror who had called A.D.A. Hinckley:

> THE COURT:  The juror I'm about to speak with made a phone call to Mr. Hinckley and said something regarding something that juror Salerno said about Mr. Bari, so we're going to find out. . . .  I need now to find out what it is you told him and what was the basis of it.

JUROR [SCID]:[8/]  The impetus for calling was, a juror, <u>after we reached our verdict</u>, said that he had been represented by the defense attorney.

THE COURT:  Fine. When was the first time that the juror mentioned that?

JUROR [SCID]:  <u>After we reached our verdict</u>.  I can't remember if it was while waiting to come in and report [our verdict], or when we went back, if we were waiting to be released.

THE COURT:  What else did he say about when he was represented by the defense lawyer?

JUROR [SCID]:  Just that he forgot.

THE COURT:  He forgot that he had been represented?

JUROR [SCID]:  Something –

THE COURT:  Did he say in what kind of a case or how long ago?

JUROR [SCID]:  No, but I remember from the voir dire he said that he was – there was an assault charge against him that I believe was dropped or reduced or something – oh.  He said he helped him.  He said he had helped him.

THE COURT:  "Helped" was his word?

JUROR [SCID]:  I believe so.

THE COURT:  Not necessarily "represented," or 'helped and represented' or just "represented"?

JUROR [SCID]:  I couldn't say with certainty.

THE COURT:  <u>Did Mr. Salerno mention anything about Mr. Bari during the deliberations</u>?

---

[8/]    The transcript erroneously refers to the Juror as Juror Brown; Justice McLaughlin's decision on the Motion to Set Aside the Verdict refers to the Juror as Juror Number 11, and the voir dire transcript (VD 110) identifies Juror Number 11 as Ms. Scid.  (See Danzig Aff. Ex. A: Brown 1st Dep't Br. at 12 n.2; Danzig Aff. Ex. C: State 1st Dep't Br. at 18 & n.7.)

JUROR [SCID]:  Who's Mr. Bari?

THE COURT:  The defense lawyer.

JUROR [SCID]:  <u>No. Not that I recall</u>.

. . . .

THE COURT:  . . . Did anybody say anything when Mr. Salerno said he had been helped, or represented, or had some association with Mr. Bari?

JUROR [SCID]:  Not that I recall.

THE COURT:  Not that you heard.  Not that you heard.  All right.  <u>Did it have anything to do with your deliberations</u>?

JUROR [SCID]:  <u>No.</u>

THE COURT:  <u>Did it have anything to do with anybody's deliberations, as far as you know</u>, the fact that Mr. Salerno had, or may have had an association or some help in the past with Mr. Bari?

JUROR [SCID]:  <u>That was not apparent to me</u>.

(J.D.H. 2-4, emphasis added.)

Justice McLaughlin next interviewed Juror Salerno, who testified as follows:

THE COURT:  Well, was the juror correct, that you had said something to the effect that you had a prior association with Mr. Bari?

JUROR SALERNO:  Yes.  <u>After deliberations were already completed, yes</u>.

THE COURT:  What was your association or the circumstance under which you had something to do with Mr. Bari before this case?

JUROR SALERNO:   About ten years ago, he represented me in–in–in my–why I got arrested.

. . . .

THE COURT:  Now, how come you didn't mention you knew Bari or was represented by him?

JUROR SALERNO:  I didn't realize it until the next day.  His name was familiar to me, but it had been ten years.  But it just didn't register.

Then I called my mother the next day and I said, "What was my lawyer's name?" And then she said, you know, Mike Bari.  And then I–

THE COURT:  The next day, the day on which you realized it, were you a juror then or were you still being questioned about being a juror?

JUROR SALERNO:  No.  I was already selected to be a juror.

THE COURT:  Why didn't you mention it at that time?

JUROR SALERNO:  Because I–I didn't feel that it was relevant.  It would not have changed my opinion.

THE COURT:  Will it affect your ability to decide this case?

JUROR SALERNO:  Absolutely not.

THE COURT:  Do you think Bari did a good job or a lousy job ten years ago?

JUROR SALERNO:  For me, I think he did a fine job for me.

(J.D.H. 5-7, emphasis added.)

In the midst of Juror Salerno's testimony, Mr. Bari entered the courtroom.  (See J.D.H. 8; see also Dkt. No. 8: Danzig Aff. Ex. L: Justice McLaughlin "Decision on Motion to Set Aside the Verdict" at 1 ("Defense counsel was delayed coming to court, but was present for most of Juror No. 6's statements.").)  Justice McLaughlin summarized Juror Salerno's testimony for Mr. Bari. (J.D.H. 8-9.)  With Mr. Bari present, Juror Salerno further testified as follows:

THE COURT:  Had you actually announced the verdict or were you waiting to be called out to give the verdict when you mentioned that you had been represented by Mr. Bari?

JUROR SALERNO:  <u>The verdict wasn't announced.  We had decided what we were going to announce</u> –

THE COURT:  Right.

JUROR SALERNO:  Then, you know, everybody–he–everyone was just talking very freely and that's how it came up.

THE COURT:  <u>How did having been represented by Mr. Bari affect you during your listening to the case,</u> listening to whatever Mr. Bari was doing here in the case and then your decision?

JUROR SALERNO:  <u>It didn't affect me at all</u>.  It was – like I said, it was nine to ten years ago.  It was a long time ago.

. . . .

THE COURT:  Mr. Bari, do you have any questions?

MR. BARI:  How long ago did you say I represented you?

JUROR SALERNO:  It had to be nine to ten years ago.  It was quite a while ago, actually, when I first came to Manhattan so it was about ten years ago.

THE COURT:  Were there many appearances in court?

JUROR SALERNO:  No.  It was one appearance and that was it.

. . . .

THE COURT:  One appearance and a dismissal?

JUROR SALERNO:  Yes, sir.

THE COURT:  Anything else?

MR. BARI:  <u>I don't recall it.  That's all I have to say, Judge</u>.

(J.D.H. 9-11, emphasis added.)   Mr. Bari did not object to the juror disqualification hearing apparently having started in his absence.  (J.D.H. 8-13.)

**Sentence and Motion to Set Aside the Verdict**

On April 2, 2004, Justice McLaughlin found Brown to be a violent predicate felon. (Dkt. No. 7: 4/2/04 Sentencing Transcript ["S."] 6.)  Brown read a prepared statement at sentencing, which stated that Justice McLaughlin had "been quite fair to [Brown] with regard to this whole trial." (S. 7.)  Brown claimed, however, that Daniels was "a liar."  (S. 8-11.)  Brown reiterated:

> What I did was punch him [Daniels] in his face.  I did not stab him in the face.  That's his blunt lie.  He's lying.

(S. 12.)  Brown, and defense attorney Bari on Brown's behalf, moved to set aside the verdict.  (S. 8, 12.)  Justice McLaughlin orally denied the motion and sentenced Brown to the minimum sentence, five years imprisonment.  (S. 6, 13.)

Also on April 2, 2004, Justice McLaughlin denied the motion to set aside the verdict in a written decision.  (Dkt. No. 8: Danzig Aff. Ex. L: 4/2/04 Justice McLaughlin "Decision on Motion to Set Aside Verdict.")  Justice McLaughlin held that he "credits the statements made by both jurors about when Juror [Salerno] announced that he had been represented by defense counsel.  The juror made that announcement after the jury had agreed on a verdict."  (Id. at 1.)  Justice McLaughlin continued:

> Based on the statements of the two jurors, and defense counsel's statement that he did not recall that Juror [Salerno] was a former client, the court concludes that the juror's failure to reveal his prior association with defense counsel does not require setting aside the guilty verdict. . . . [T]he juror stated that his prior dealing with defense counsel, in fact, did not affect his decision about the case.  And because Juror [Salerno] did not reveal that information until after a verdict had been reached, the

juror's prior association with defense counsel did not affect how any of the other
jurors decided the case.

(Id. at 2-3.) Justice McLaughlin concluded that Juror Salerno's failure to reveal his prior association

with defense counsel "was harmless and did not prejudice defendant or otherwise compromise the

fairness of the trial."  (Id. at 3.)

**Brown's Direct Appeal**

In August 2005, represented by new counsel (the Office of the Appellate Defender

and an atorney from the Linklaters firm), Brown appealed to the First Department, claiming that:

(1) "[t]he trial court wrongly refused to charge the lesser included offense of assault in the third

degree where there was a reasonable view of the evidence that no weapon had been used" (Dkt. No.

8: Danzig Aff. Ex. A: Brown 1st Dep't Br. at 15-22); (2) "[t]he trial court committed reversible error

when it convened the juror disqualification hearing prior to defense counsel's arrival in the

courtroom" (id. at 23-26); (3) "[t]he trial court's failure to set aside the guilty verdict due to a juror's

decision not to divulge that defense counsel had represented him in an assault case until completion

of deliberations violated Mr. Brown's right under the New York State Constitution to a jury chosen

with his participation and according to law" (id. at 27-32).

In addition, Brown filed a pro se supplemental brief to the First Department, alleging

that: (1) "[t]he District Attorney's office committed malicious prosecution and prosecutorial

misconduct" by (a) altering the hospital records of the victim (Danzig Aff. Ex. B: Brown Pro Se

Supp. 1st Dep't Br. at 5-7); (b) offering into evidence a corkscrew that was not the actual corkscrew

recovered from Brown at the time of his arrest (id. a 5, 7-8); (c) not establishing with any supporting

20

evidence that a weapon had been used (<u>id</u>. at 8-9); (d) not indicting Brown on a weapons charge (<u>id</u>. at 9); (e) dismissing the first indictment for three counts of robbery then issuing a "second indictment for the same charge," with the addition of second degree assault (<u>id</u>. at 10); and (2) trial counsel was ineffective for: (a) failing "to have scientific testing done on [the] weapon to see if it was used" in the commission of the crime (<u>id</u>. at 12-13); (b) failing to request a mistrial based on counsel's prior association with a juror (<u>id</u>. at 13-14).

On May 23, 2006, the First Department unanimously affirmed Brown's conviction, holding in full:

> The court properly declined to submit third-degree assault as a lesser included offense since there was no reasonable view of the evidence that the victim's injury was caused without the use of a dangerous instrument. The People's evidence, including medical records, consistently demonstrated that the victim suffered a puncture wound that went through his lower jaw to the gum line. The victim testified that defendant struck his face with something hard and sharp. Defendant admitted hitting the victim in the face, but claimed that he only used his fist. On this evidence, the causation of the injury did not present a credibility issue for the jury to resolve. Rather, there was no reasonable view of the evidence supporting the conclusion that defendant caused the victim's injury but did so without using a dangerous instrument.

> Defendant was not entitled to a new trial based on a juror's post-verdict admission that defense counsel had represented him many years before. The juror made no misrepresentations during the voir dire, and became fully aware of the prior relationship only after jury selection when his mother told him the name of the attorney who had represented him. The juror stated that the prior representation did not influence him in any manner, and he had not thought to bring the matter to the court's attention. Another juror alerted the prosecutor when the first juror mentioned this circumstance in the jury room after the verdict. Notably, the second juror had voiced a criticism of defense counsel to the first juror, who responded that counsel had done a good job for him. The court properly made inquiry of both jurors, and just as properly concluded there was no basis upon which to set aside the verdict.

> Defendant's claim that the court conducted a part of the proceedings in defense counsel's absence is not one that is exempt from preservation requirements,

and we decline to review this unpreserved claim in the interest of justice. Were we to review it, we would find no basis for reversing the conviction. That being said, we note our disapproval of the Trial Justice's commencement of the hearing in defense counsel's absence.

Defendant's pro se claims are without merit.

People v. Brown, 29 A.D.3d 443, 443-44, 815 N.Y.S.2d 84, 85-86 (1st Dep't 2006) (citations omitted).

By letter dated June 23, 2006, Brown's counsel sought leave to appeal to the New York Court of Appeals. (Dkt. No. 8: Danzig Aff. Ex. E: Leave to Appeal Letter.) The leave letter focused on and discussed at length the failure to charge third degree assault (id. at 1-2) and commencement of the juror disqualification hearing before defense counsel's arrival (id. at 2). The leave letter's final paragraph stated:

> In support of this application, Mr. Brown relies on this letter, portions of the trial transcript relevant to the questions of law discussed above, decisions from the trial court regarding the disposition of his case, and the briefs he filed in the Appellate Division,[1] copies of which are enclosed. . . .

> [1]      In addition, Defendant filed a pro se brief with the Appellate Division, which is enclosed herewith.

(Id. at 3.)

On September 21, 2006, the New York Court of Appeals denied leave to appeal. See People v. Brown, 7 N.Y.3d 846, 823 N.Y.S.2d 775 (2006).

22

**Brown's Coram Nobis Petition**

On January 22, 2007, Brown applied to the First Department for a writ of error coram nobis, alleging grounds that his appellate counsel was ineffective for failing to argue that: (1) the trial court failed to give sufficient preliminary instructions to the jury (Dkt. No. 8: Danzig Aff. Ex. G: Brown Pro Se Coram Nobis Pet. at 4-7); (2) the trial court gave erroneous "final instructions" to the jury, including instructions as to criminal intent, burden-shifting, reasonable doubt, and the use of hypothetical examples (id. at 7-18, 24-31); (3) "[trial] counsel's allowance of the medical reports of Eric Daniels without objection for lack of a foundation having first been established" was error (id. at 18-23); (4) the jury gave an improper "compromise verdict" (id. at 9-11); (5) the trial court improperly joined the robbery and assault counts (id. at 9-11); and (6) the jury's verdict, acquitting Brown on the robbery charge but convicting him on the assault charge, contradicted the facts (id. at 17-18).

On June 5, 2007, the First Department denied Brown's coram nobis petition without opinion. (Danzig Aff. Ex. I: 6/5/07 1st Dep't Order.) On August 23, 2007, the New York Court of Appeals denied leave to appeal. People v. Brown, 9 N.Y.3d 873, 842 N.Y.S.2d 785 (2007).

**Brown's Federal Habeas Corpus Petition**

Brown's timely September 11, 2007 pro se habeas petition asserts that: (1) "there occurred prosecutorial misconduct"[9] (Dkt. No. 1: Pet. ¶ 13); (2) the trial court erred by not setting aside the verdict due to juror misconduct[10] (Pet. ¶ 13); (3) the trial court erred in proceeding with the post-trial juror misconduct hearing without defense counsel present (Pet. ¶ 13); (4) the trial court "erred in not submitting the lesser-included offense of assault [in the] third degree" (Pet. ¶ 13); (5) Brown was denied effective assistance of appellate counsel when appellate counsel did not raise "all the more meritorious claims of prejudicial errors that rendered the verdict unreliable"[11] (Pet. ¶ 13, incorporating Danzig Aff. Ex. G: Brown Pro Se Coram Nobis Br. at 2); (6) Brown was denied effective assistance of appellate counsel for not arguing that trial counsel was ineffective for failing to object to all the errors set forth in Brown's coram nobis petition (Pet. ¶ 13, incorporating Brown Pro Se Coram Nobis Br. at 4-31); and (7) "[t]rial counsel was required to 'object' to the errors

---

[9]    On direct appeal, Brown claimed that the prosecutor engaged in misconduct when he: (1) introduced altered hospital records into evidence; (2) introduced a corkscrew into evidence that was not the corkscrew recovered from Brown upon his arrest; (3) did not use scientific tests to prove Brown used the weapon; and (4) failed to charge Brown with weapons possession. (Dkt. No. 8: Danzig Aff. Ex. B: Brown Pro Se Supp. 1st Dep't Br. at 5-10.)

[10]    Brown refers to this issue in his habeas petition as "the jury misconduct issue." (Pet. ¶ 13.) Brown raised the claim in his counseled direct appeal to the First Department. (Danzig Aff. Ex. A: Brown 1st Dep't Br. at 27-32.)

[11]    Brown argues that appellate counsel should have raised the following claims: "prejudicial and erroneous instructions given by the trial court on 'reasonable dou[b]t,' compromise verdict, double jeopardy, erroneous instructions on 'intent,' coupled with the burden shifting instructions on reasonable doubt, as well as improper admission of hospital reports." (Pet. ¶ 13.)

complained of in the writ of error coram nobis" (Pet. ¶ 13, incorporating Brown Pro Se Coram Nobis

Br. at 4-31).

**ANALYSIS**

**I.    THE AEDPA REVIEW STANDARD**

Before the Court can determine whether petitioner is entitled to federal habeas relief,

the Court must address the proper habeas corpus review standard under the Antiterrorism and

Effective Death Penalty Act ("AEDPA").

In enacting the AEDPA, Congress significantly "modifie[d] the role of federal habeas

courts in reviewing petitions filed by state prisoners." Williams v. Taylor, 529 U.S. 362, 403, 120

S. Ct. 1495, 1518 (2000).  The AEDPA imposed a more stringent review standard, as follows:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law, as
>> determined by the Supreme Court of the United States; or
>>
>> (2)  . . . was based on an unreasonable determination of the facts in
>> light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).[12]

---

[12]    See also, e.g., Henry v. Poole, 409 F.3d 48, 67 (2d Cir. 2005), cert. denied, 547 U.S. 1040,
126 S. Ct. 1622 (2006); Howard v. Walker, 406 F.3d 114, 121-22 (2d Cir. 2005); Cox v.
Donnelly, 387 F.3d 193, 197 (2d Cir. 2004); Dallio v. Spitzer, 343 F.3d 553, 559-60 (2d Cir.
2003), cert. denied, 541 U.S. 961, 124 S. Ct. 1713 (2004); Eze v. Senkowski, 321 F.3d 110,
120 (2d Cir. 2003) ("AEDPA changed the landscape of federal habeas corpus review by
(continued...)

25

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meaning." Williams v. Taylor, 529 U.S. at 404-05, 120 S. Ct. at 1519.[13/] Both, however, "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence." Williams v. Taylor, 529 U.S. at 412, 120 S. Ct. at 1523.[14/] "That federal law, as defined by the

---

[12/]   (...continued)
'significantly curtail[ing] the power of federal courts to grant the habeas petitions of state prisoners.'") (quoting Lainfiesta v. Artuz, 253 F.3d 151, 155 (2d Cir. 2001), cert. denied, 535 U.S. 1019, 122 S. Ct. 1611 (2002)).

[13/]   Accord, e.g., Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir.), cert. denied, 540 U.S. 1091, 124 S. Ct. 962 (2003); Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000); Lurie v. Wittner, 228 F.3d 113, 125 (2d Cir. 2000), cert. denied, 532 U.S. 943, 121 S. Ct. 1404 (2001); Clark v. Stinson, 214 F.3d 315, 320 (2d Cir. 2000), cert. denied, 531 U.S. 1116, 121 S. Ct. 865 (2001).

[14/]   Accord, e.g., Carey v. Musladin, 549 U.S. 70, 127 S. Ct. 649, 654 (2006) ("Given the lack of holdings from the Court regarding this [issue], it cannot be said that the state court 'unreasonabl[y] appli[ed]' clearly established Federal law.'"); Yarborough v. Alvarado, 541 U.S. 652, 659, 124 S. Ct. 2140, 2147 (2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); Wiggins v. Smith, 539 U.S. 510, 519, 123 S. Ct. 2527, 2534 (2003); Lockyer v. Andrade, 538 U.S. 63, 72, 123 S. Ct. 1166, 1172 (2003) ("Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'"); Rodriguez v. Miller, 499 F.3d 136, 140 (2d Cir. 2007) ("'Clearly established federal law' refers only to the holdings of the Supreme Court. No principle of constitutional law grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court can provide the basis for habeas relief. Leading by example, Musladin admonishes courts to read the Supreme Court's holdings narrowly and to disregard as dicta for habeas purposes much of the underlying logic and rationale of the high court's decisions.") (citations & fn. omitted), cert. denied, __ U.S. __, 2008 WL 102403 (Mar. 17, 2008); Howard v. Walker, 406 F.3d at 122; Tueros v. Greiner, 343 F.3d 587, 591 (2d Cir. 2003), cert. denied, 541 U.S. 1047, 124 S. Ct. 2171 (2004); Parsad v. Greiner, 337 F.3d at 181; DelValle v. Armstrong, 306 F.3d 1197, 1200 (2d Cir. 2002); Yung v. Walker, 341 F.3d 104, 109-110 (2d Cir. 2003); Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir.), cert. denied, 537 U.S. 909, 123 S. Ct. 251 (2002); Loliscio v. Goord, 263 F.3d 178, 184 (2d Cir. 2001); Sellan v. Kuhlman, 261 F.3d 303, 309 (2d Cir. 2001).

Supreme Court, may be either a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v. Miller, 289 F.3d at 42. "A petitioner can not win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent." Yung v. Walker, 341 F.3d at 110; accord, e.g., Rodriguez v. Miller, 499 F.3d at 140; DelValle v. Armstrong, 306 F.3d at 1200.

> As to the "contrary to" clause:
>
> A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases. . . . A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.

Williams v. Taylor, 529 U.S. at 405-06, 120 S. Ct. at 1519-20.[15/]

> In Williams, the Supreme Court explained that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the

---

[15/]    Accord, e.g., Brown v. Payton, 544 U.S. 133, 125 S. Ct. 1432, 1438-39 (2005); Bell v. Cone, 543 U.S. 447, 452-53, 125 S. Ct. 847, 851 (2005); Price v. Vincent, 538 U.S. 634, 640, 123 S. Ct. 1848, 1853 (2003); Lockyer v. Andrade, 123 S. Ct. at 1173-74; Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006), cert. denied, 127 S. Ct. 1267 (2007); Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d 210, 219 (2d Cir.), cert. denied, 546 U.S. 889, 126 S. Ct. 215 (2005); Tueros v. Greiner, 343 F.3d at 591; DelValle v. Armstrong, 306 F.3d at 1200; Yung v. Walker, 341 F.3d at 109; Kennaugh v. Miller, 289 F.3d at 42; Loliscio v. Goord, 263 F.3d at 184; Lurie v. Wittner, 228 F.3d at 127-28.

facts of the prisoner's case." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 413, 120 S. Ct. at 1523.[16/] However,

"[t]he term 'unreasonable' is . . . difficult to define." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 410, 120 S. Ct.

at 1522. The Supreme Court made clear that "an <u>unreasonable</u> application of federal law is different

from an <u>incorrect</u> application of federal law." <u>Id</u>.[17/] Rather, the issue is "whether the state court's

application of clearly established federal law was objectively unreasonable." <u>Williams</u> v. <u>Taylor</u>,

529 U.S. at 409, 120 S. Ct. at 1521.[18/] "Objectively unreasonable" is different from "clear error."

<u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. at 75, 123 S. Ct. at 1175 ("The gloss of clear error fails to give proper

---

[16/]    Accord, <u>e.g.</u>, <u>Brown</u> v. <u>Payton</u>, 544 U.S. at 141, 125 S. Ct. at 1439; <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 520, 123 S. Ct. at 2534-35; <u>Lynn</u> v. <u>Bliden</u>, 443 F.3d 238, 246 (2d Cir. 2006), <u>cert. denied</u>, 127 S. Ct. 1383 (2007); <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Parsad</u> v. <u>Greiner</u>, 337 F.3d at 181.

[17/]    See also, <u>e.g.</u>, <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 664, 124 S. Ct. at 2150; <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 520, 123 S. Ct. at 2535; <u>Price</u> v. <u>Vincent</u>, 538 U.S. at 641, 123 S. Ct. at 1853 ("As we have explained: '[A] federal habeas court may not issue the writ simply because that court concludes that the state-court decision applied [a Supreme Court case] incorrectly.'") (quoting <u>Woodford</u> v. <u>Visciotti</u>, 537 U.S. 19, 24-25, 123 S. Ct. 357, 360 (2002)); <u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. at 75, 123 S. Ct. at 1175; <u>Hawkins</u> v. <u>Costello</u>, 460 F.3d at 243; <u>Lynn</u> v. <u>Bliden</u>, 443 F.3d at 246; <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Rosa</u> v. <u>McCray</u>, 396 F.3d at 219; <u>Cox</u> v. <u>Donnelly</u>, 387 F.3d at 197; <u>Eze</u> v. <u>Senkowski</u>, 321 F.3d at 124-25; <u>DelValle</u> v. <u>Armstrong</u>, 306 F.3d at 1200 ("With regard to issues of law, therefore, if the state court's decision was not an unreasonable application of, or contrary to, clearly established federal law as defined by Section 2254(d), we may not grant habeas relief even if in our judgment its application was erroneous.").

[18/]    Accord, <u>e.g.</u>, <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 664, 124 S. Ct. at 2150; <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 520-21, 123 S. Ct. at 2535; <u>Price</u> v. <u>Vincent</u>, 538 U.S. at 641, 123 S. Ct. at 1853; <u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. at 75, 123 S. Ct. at 1174-75; <u>Woodford</u> v. <u>Visciotti</u>, 537 U.S. at 25-27, 123 S. Ct. at 360-61; <u>Mosby</u> v. <u>Senkowski</u>, 470 F.3d 515, 519 (2d Cir. 2006), <u>cert. denied</u>, 128 S. Ct. 75 (2007); <u>Hawkins</u> v. <u>Costello</u>, 460 F.3d at 243; <u>Lynn</u> v. <u>Bliden</u>, 443 F.3d at 246; <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Cox</u> v. <u>Donnelly</u>, 387 F.3d at 197; <u>Eze</u> v. <u>Senkowski</u>, 321 F.3d at 125; <u>Ryan</u> v. <u>Miller</u>, 303 F.3d 231, 245 (2d Cir. 2002); <u>Loliscio</u> v. <u>Goord</u>, 263 F.3d at 184; <u>Lurie</u> v. <u>Wittner</u>, 228 F.3d at 128-29.

deference to state courts by conflating error (even clear error) with unreasonableness."). However, the Second Circuit has explained "that while '[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" Jones v. Stinson, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)).[19] "[T]he range of reasonable judgment can depend in part on the nature of the relevant rule." Yarborough v. Alvarado, 541 U.S. at 663, 124 S. Ct. at 2149.[20] "Even if the state court issues a decision 'contrary to' clearly established February 25, 2008 Supreme Court law, . . . a petitioner 'cannot obtain relief . . . unless application of a *correct* interpretation of that [Supreme Court] decision leads to the conclusion that his rights were violated.'" Cousin v. Bennett, 511 F.3d 334, 339 (2d Cir. 2008).

---

[19]    Accord, e.g., Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 219; Cox v. Donnelly, 387 F.3d at 197, 200-01; Eze v. Senkowski, 321 F.3d at 125; Ryan v. Miller, 303 F.3d at 245; Yung v. Walker, 341 F.3d at 110; Loliscio v. Goord, 263 F.3d at 184.

[20]    The Supreme Court explained:

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. at 663, 124 S. Ct. at 2149; accord, e.g., Rodriguez v. Miller, 499 F.3d at 143; Hawkins v. Costello, 460 F.3d at 243.

Moreover, the Second Circuit has held "that a state court determination is reviewable under AEDPA if the state decision unreasonably failed to extend a clearly established, Supreme Court defined, legal principle to situations which that principle should have, in reason, governed." Kennaugh v. Miller, 289 F.3d at 45.[21/]

Under the AEDPA, in short, the federal courts "must give the state court's adjudication a high degree of deference."  Yung v. Walker, 341 F.3d at 109; accord, e.g., Bell v. Cone, 543 U.S. at 455, 125 S. Ct. at 853; Mosby v. Senkowski, 470 F.3d at 519.

Even where the state court decision does not specifically refer to either the federal claim or to relevant federal case law, the deferential AEDPA review standard applies:

> For the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment.  When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

Sellan v. Kuhlman, 261 F.3d at 312; accord, e.g., Bell v. Cone, 543 U.S. at 455, 125 S. Ct. at 853 ("Federal courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation."); Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362,

---

[21/]    Accord, e.g., Tueros v. Greiner, 343 F.3d at 591; Yung v. Walker, 341 F.3d at 109; see Yarborough v. Alvarado, 541 U.S. at 665-66, 124 S. Ct. at 2150-51 ("The petitioner contends that if a habeas court must extend a rationale before it can apply to the facts at hand then the rationale cannot be clearly established at the time of the state-court decision.  There is force to this argument.  Section 2254(d)(1) would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.  At the same time, the difference between applying a rule and extending it is not always clear.  Certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt.") (citations omitted).

365 (2002) (State court not required to cite Supreme Court cases, or even be aware of them, to be entitled to AEDPA deference, "so long as neither the reasoning nor the result of the state-court decision contradicts them."); Mosby v. Senkowski, 470 F.3d at 519; Hawkins v. Costello, 460 F.3d at 243; Lynn v. Bliden, 443 F.3d at 246; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 220; Wade v. Herbert, 391 F.3d 135, 140 (2d Cir. 2004) (Appellate Division held claim was "'without merit.'"  "Such a summary determination, even absent citation of federal case law, is a determination 'on the merits' and as such requires the deference specified by § 2254."  Moreover, "if any reasonable ground was available [for the state court's decision], we must assume the [state] court relied on it."); Francolino v. Kuhlman, 365 F.3d 137, 141 (2d Cir.) (Where "the Appellate Division concluded its opinion by stating that it had 'considered and rejected defendants' remaining claims,'" AEDPA deference applies.), cert. denied, 543 U.S. 872, 125 S. Ct. 110 (2004); Jenkins v. Artuz, 294 F.3d 284, 291 (2d Cir. 2002) ("In Sellan, we found that an even more concise Appellate Division disposition – the word 'denied' – triggered AEDPA deference."); but cf. Bell v. Miller, 500 F.3d 149, 155 (2d Cir. 2007) (A "contrary-to-fact construction is not the same as an alternative holding. . . . We decline to read a contingent observation as an 'adjudication on the merits.'"  De novo review applies in such a case.).

Where the state court decision is not clear as to whether it rests on federal law or state procedural law, the Second Circuit in Jimenez v. Walker, 458 F.3d 130, 145-46 (2d Cir. 2006), cert. denied, 127 S. Ct. 976 (2007), instructed that the court must "examine the three clues laid out in Coleman, Quirama and Sellan" – that is, "(1) the face of the state-court opinion, (2) whether the state court was aware of a procedural bar, and (3) the practice of state courts in similar circumstances."

Jimenez v. Walker, 458 F.3d at 145 & n.16; accord, e.g., Clark v. Perez, 510 F.3d 382, 394 (2d Cir.

2008).  Using these three factors, the court should

> classify the decision as either:
>
> > (1)     fairly appearing to rest primarily on federal law or to be interwoven with federal law or
> >
> > (2)     fairly appearing to rest primarily on state procedural law.
>
> Absent a clear and express statement of reliance on a state procedural bar, the Harris presumption applies to decisions in the first category and deems them to rest on the merits of the federal claim.  Such decisions are not procedurally barred and must be afforded AEDPA deference as adjudications "on the merits" under 28 U.S.C. § 2254(d).  The Harris presumption does not apply to decisions in the second category, which show themselves to rest on an independent state procedural bar.  Nor does it apply to decisions in the first category which contain a clear statement of reliance on a state procedural bar.  No AEDPA deference is due to these decisions, but the state may successfully assert that habeas relief is foreclosed provided that the independent state procedural bar is adequate to support the judgment and that neither cause and prejudice nor a fundamental miscarriage of justice is shown.
>
> > The effect of these rules is to present federal habeas courts with a binary circumstance: we either apply AEDPA deference to review a state court's disposition of a federal claim or refuse to review the claim because of a procedural bar properly raised.  The middle ground . . . does not exist.

Jimenez v. Walker, 458 F.3d at 145-46 (citations & fns. omitted); accord, e.g., Hawkins v. Costello,

460 F.3d at 242 ("In Jimenez v. Walker, we recently made clear that when a state court rejects a

petitioner's claim as either unpreserved or without merit, the conclusive presumption is that the

adjudication rested on the merits.").  Of course, "[i]f there is no [state court] adjudication on the

merits [and no procedural bar], then the pre-AEDPA, de novo standard of review applies."  Cotto

v. Herbert, 331 F.3d 217, 230 (2d Cir. 2003); see also Jimenez v. Walker, 458 F.3d at 145 n.17.

Finally, "[i]f [the] court finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such error was harmless." Howard v. Walker, 406 F.3d at 122.

In addition to the standard of review of legal issues, the AEDPA provides a deferential review standard for state court factual determinations: "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); accord, e.g., Lynn v. Bliden, 443 F.3d at 246-47; Rosa v. McCray, 396 F.3d at 220. "The petitioner bears the burden of 'rebutting the presumption of correctness by clear and convincing evidence.'" Parsad v. Greiner, 337 F.3d at 181 (quoting § 2254(e)(1)); accord, e.g., Lynn v. Bliden, 443 F.3d at 246-47.

## II.    BROWN'S HABEAS CLAIM THAT THE TRIAL COURT ERRED IN COMMENCING THE JUROR DISQUALIFICATION HEARING WITHOUT DEFENSE COUNSEL PRESENT IS BARRED BY ADEQUATE AND INDEPENDENT STATE GROUNDS

Brown's claim that the trial court erred in commencing the juror disqualification hearing without defense counsel present (Dkt. No. 1: Pet. ¶ 13; see also Dkt. No. 8: Danzig Aff. Ex. A: Brown 1st Dep't Br. at 27-32) was denied by the First Department on Brown's direct appeal as "unpreserved" and "not [a claim] that is exempt from preservation requirements." People v. Brown, 29 A.D.3d 443, 444, 815 N.Y.S.2d 84, 86 (1st Dep't), appeal denied, 7 N.Y.3d 846, 823 N.Y.S.2d 775 (2006).

The Supreme Court has made clear that the "adequate and independent state ground doctrine applies on federal habeas," such that "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show

cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." Harris v. Reed, 489 U.S. 255, 262, 109 S. Ct. 1038, 1043 (1989) (citations & internal quotations omitted).[22/]

"[I]n order to preclude federal review [under the adequate and independent doctrine], the last state court to render judgment must 'clearly and expressly state . . . that its judgment rest[ed] on a state procedural bar.'" Jones v. Vacco, 126 F.3d at 415 (quoting Glenn v. Bartlett, 98 F.3d at 724). The Second Circuit has made clear that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." Velasquez v. Leonardo, 898 F.2d at 9; accord, e.g., Harris v. Reed, 489 U.S. 255, 264 n.10, 109 S. Ct. 1038, 1044 n.10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.").[23/]    Thus, "as long as the state court explicitly

---

[22/]    See also, e.g., Schlup v. Delo, 513 U.S. 298, 314-16, 115 S. Ct. 851, 860-61 (1995); Coleman v. Thompson, 501 U.S. 722, 735, 111 S. Ct. 2546, 2557 (1991); Murray v. Carrier, 477 U.S. 478, 485-88, 496, 106 S. Ct. 2639, 2644-45, 2649-50 (1986); Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997); Garcia v. Lewis, 188 F.3d 71, 76-77 (2d Cir. 1999); Reyes v. Keane, 118 F.3d 136, 138-40 (2d Cir. 1997); Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996), cert. denied, 520 U.S. 1108, 117 S. Ct. 1116 (1997); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).

[23/]    See, e.g., Garcia v. Lewis, 188 F.3d at 77-82; Glenn v. Bartlett, 98 F.3d at 724-25; see also, e.g., Santiago v. People, 97 Civ. 5076, 1998 WL 803414 at *4 (S.D.N.Y. Oct. 13, 1998) ("When the state court rejects a claim both on the merits and because it was waived under the state's procedural law, review of the claim on a federal habeas corpus petition is barred.").

34

invokes a state procedural bar rule as a separate basis for decision," the adequate and independent

doctrine "curtails reconsideration of the federal issue on federal habeas." Harris v. Reed, 489 U.S.

at 264 n.10, 109 S. Ct. at 1044 n.10.

Brown's brief to the First Department raised the same claim – that the trial court erred

in commencing the juror disqualification hearing without defense counsel present – that he now

raises as a habeas claim.  (Dkt. No. 1: Pet. ¶ 13; see Brown 1st Dep't Br. at 27-32.)  The First

Department held that:

> Defendant's claim that the court conducted a part of the proceedings in
> defense counsel's absence is not one that is exempt from preservation requirements,
> and we decline to review this unpreserved claim in the interest of justice.  Were we
> to review it, we would find no basis for reversing the conviction.

People v. Brown, 29 A.D.3d at 444.

State courts are not required to use any particular language:

> We encourage state courts to express plainly, in every decision potentially subject to
> federal review, the grounds upon which their judgments rest, but we will not impose
> on state courts the responsibility for using particular language in every case in which
> a state prisoner presents a federal claim – every state appeal, every denial of state
> collateral review – in order that federal courts might not be bothered with reviewing
> state law and the record in the case.

Coleman v. Thompson, 501 U.S. at 739, 111 S. Ct. at 2559.

Furthermore, unlike the situation where the state court holds that claims were either

unpreserved or without merit, which the Second Circuit has found is usually too ambiguous to

preclude habeas review,[24/] here the First Department explicitly stated that it found petitioner's claim

---

[24/]    See, e.g., Galarza v. Keane, 252 F.3d 630, 637 (2d Cir. 2001) ("We have found a state court's
(continued...)

is "unpreserved" and "not [a claim] that is exempt from preservation requirements" (see pages 20-21 above) and the fact that the First Department also stated the conclusion it would reach on the merits if it was to review this claim, does not change the result.  See, e.g., Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810-11 & n.4 (2d Cir. 2000) ("where a state court says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved"); Glenn v. Bartlett, 98 F.3d at 724-25 & n.3 (state decision which denied prosecutorial misconduct claim as not preserved for appellate review represented an independent and adequate state procedural ground even though court addressed merits of claim "in the interests of justice"); Velasquez v. Leonardo, 898 F.2d at 9 (state decision which denied claims as procedurally barred but then alternatively addressed merits rested on adequate and independent state grounds).  Thus, the First Department's decision here unambiguously rested on a state procedural ground.[25]

The Supreme Court has established that "the procedural bar doctrine only precludes habeas review when the state procedural ground is firmly established and regularly followed by the state courts."  Simpson v. Portuondo, 01 Civ. 8744, 2002 WL 31045862 at *4 (S.D.N.Y. June 4,

[24]    (...continued)
reliance on a state procedural bar to be ambiguous, and thus refused to invoke a procedural bar, where . . . the state court rejected defendant's claims on appeal as 'either meritless or unpreserved.'"); Tankleff v. Senkowski, 135 F.3d 235, 247 (2d Cir. 1998); Reid v. Senkowski, 961 F.2d 374, 377 (2d Cir. 1992).

[25]    The New York Court of Appeals denied petitioner's application for leave to appeal.  (See page 21 above.)  The Supreme Court held in Ylst v. Nunnemaker, 501 U.S. 797, 111 S. Ct. 2590 (1991), with respect to unexplained orders, that federal habeas courts should presume that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."  Id. at 803, 111 S. Ct. at 2594.  Petitioner has presented no facts to rebut that presumption here.

2002) (citing James v. Kentucky, 466 U.S. 341, 348-49, 104 S. Ct. 1830, 1835 (1984)); accord, e.g.,

Clark v. Perez, 510 F.3d 382, 391 (2d Cir. 2008).

       Under New York law, "[a]s a general rule points which were not raised at trial may

not be considered for the first time on appeal."  People v. Thomas, 50 N.Y.2d 467, 471, 429

N.Y.S.2d 584 (1980) (citing C.P.L. § 470.05(2)).[26/]  Moreover, a party must make a specific protest

at the time of a claimed error to preserve an issue for appellate review.  E.g., People v. Hardy, 4

N.Y.3d 192, 197 n.3, 791 N.Y.S.2d 513, 517 n.3 (2005).

       Specifically, both the Supreme Court and the Second Circuit have held that the failure

to object at a trial (or other proceeding) when required by New York's contemporaneous objection

rule, C.P.L. § 470.05, is an adequate and independent state ground.  See, e.g., Wainwright v. Sykes,

433 U.S. 72, 86, 90, 97 S. Ct. 2497, 2506-08 (1977) (contemporaneous objection rule is an adequate

and independent state ground); Murray v. Carrier, 477 U.S. at 485-92, 497, 106 S. Ct. at 2644-48,

---

[26/]     C.P.L. § 470.05(2) provides, in relevant part:

> For the purposes of appeal, a question of law with respect to a ruling or instruction
> of a criminal court during a trial or proceeding is presented when a protest thereto
> was registered, by the party claiming error, at the time of such ruling or instruction
> or at any subsequent time when the court had an opportunity of effectively changing
> the same.  Such protest need not be in the form of an "exception" but is sufficient if
> the party made his position with respect to the ruling or instruction known to the
> court, or if in response to a protest by a party, the court expressly decided the
> question raised on appeal.  In addition, a party who without success has either
> expressly or impliedly sought or requested a particular ruling or instruction, is
> deemed to have thereby protested the court's ultimate disposition of the matter or
> failure to rule or instruct accordingly sufficiently to raise a question of law with
> respect to such disposition or failure regardless of whether any actual protest thereto
> was registered.

2650 (same); Franco v. Walsh, 73 Fed. Appx. 517, 518 (2d Cir. 2003) (finding petitioner's claim of an erroneous jury charge procedurally defaulted because "[n]o contemporaneous objection to the charge was lodged, and the Appellate Division found that the issue was therefore unpreserved."); Garcia v. Lewis, 188 F.3d at 79 ("we have observed and deferred to New York's consistent application of its contemporaneous objection rules") (citing Bossett v. Walker, 41 F.3d 825, 829 n.2 (2d Cir. 1994) (respecting state court's application of C.P.L. § 470.05(2) as adequate bar to federal habeas review), cert. denied, 514 U.S. 1054, 115 S. Ct. 1436 (1995), & Fernandez v. Leonardo, 931 F.2d 214, 216 (2d Cir.) (noting that failure to object at trial constitutes adequate procedural default under C.P.L. § 470.05(2)), cert. denied, 502 U.S. 883, 112 S. Ct. 236 (1991)); Glenn v. Bartlett, 98 F.3d at 724-25 (failure to object constituted adequate and independent state ground); Velasquez v. Leonardo, 898 F.2d at 9 (violation of New York's contemporaneous objection rule is an adequate and independent state ground).[27]

---

[27] See also, e.g., Figueroa v. Greiner, 02 Civ. 2126, 2002 WL 31356512 at *11-12 (S.D.N.Y. Oct. 18, 2002) (Peck, M.J.) ("The Second Circuit has held that the failure to object at trial when required by New York's contemporaneous objection rule, C.P.L. § 470.05, is an adequate and independent state ground."); Cooper v. LeFevre, No. 94-CV-5958, 1998 WL 386340 at *2 (E.D.N.Y. July 8, 1998) ("[T]he Second Department held that [the petitioner's claim was unpreserved because] the Petitioner violated the contemporaneous objection rule by failing 'to raise specific objections to the evidence . . . ' he cited in his appeal as having deprived him of a fair trial. . . . This Court finds that the Second Department's basis for denying Petitioner's claim was both independent of the federal question raised by such claim and adequate to support the judgment. As a result, this Court is procedurally barred from reviewing the merits of Petitioner's claim."); Jamison v. Smith, No. 94-CV-3747, 1995 WL 468279 at *2 (E.D.N.Y. July 26, 1995) ("Courts in this circuit have consistently held that the failure to object contemporaneously . . . constitutes an adequate and independent basis for barring habeas review.").

Here, Brown's counsel arrived during the juror disqualification hearing but never objected to it having started in his absence. (See pages 16-18 above.) Had defense counsel objected at that time, the trial judge could have remedied the situation, e.g., by re-commencing the hearing in defense counsel's presence. The failure to object when Brown's defense counsel arrived at the hearing deprived the trial judge of the opportunity to cure any error – the purpose of the contemporaneous objection rule, C.P.L. § 470.05(2). Accordingly, Brown's habeas claim, that the trial court erred in commencing the juror disqualification hearing without defense counsel present, should be DENIED as procedurally barred by adequate and independent state law grounds.[28]

### III.   BROWN'S HABEAS CLAIM THAT THE TRIAL COURT FAILED TO CHARGE A LESSER INCLUDED OFFENSE DOES NOT STATE A FEDERAL CONSTITUTIONAL CLAIM

Brown claims that the trial court erred in not charging the jury with third degree assault as a lesser included offense of second degree assault. (Dkt. No. 1: Pet. ¶ 13.)

There is a constitutional right to a lesser included offense charge in capital cases. Beck v. Alabama, 447 U.S. 625, 638, 100 S. Ct. 2382, 2390 (1980). The Supreme Court in Beck,

---

[28]   Because there is an adequate and independent finding by the First Department that petitioner procedurally defaulted on his claim that the trial court erred in commencing the juror disqualification proceeding without defense counsel present, petitioner would have to show in his habeas petition "cause for the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. at 750, 111 S. Ct. at 2565; see also, e.g., Schlup v. Delo, 513 U.S. at 324-27, 115 S. Ct. at 865-67 (fundamental miscarriage of justice may be demonstrated by showing through "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial," that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence"). Petitioner does not allege cause, prejudice or a fundamental miscarriage of justice.

however, left open "whether the Due Process Clause would require the giving of such instructions

in a noncapital case." Id. at 638 n.14, 100 S. Ct. at 2390 n.14.  The Second Circuit thus has held

habeas relief unavailable for a failure to charge a lesser included offense in non-capital cases. E.g.,

Jones v. Hoffman, 86 F.3d 46, 48 (2d Cir. 1996) ("Since a decision interpreting the Constitution to

require the submission of instructions on lesser-included offenses in non-capital cases would involve

the announcement of a new rule, we hold that Teague [v. Lane, 489 U.S. 288, 109 S. Ct. 1060

(1989)] precludes our consideration of the issue" in habeas cases.); accord, e.g., Rasmussen v.

Kupec, 54 Fed. Appx. 518, 519 (2d Cir. 2003) ("Both the Supreme Court and our court have

expressly refrained from deciding whether the Constitution requires lesser-included-offense

instructions in non-capital cases.  [citing Beck and Jones.]  Teague v. Lane, however, bars us from

announcing new rules of constitutional interpretation in habeas corpus cases."); Durand v. Greene,

492 F. Supp. 2d 414, 423 (S.D.N.Y. 2007) ("Given the determinations of [the Beck and Jones] courts

not to rule on the issue, it cannot be said that there is a 'clearly established' right under federal law

to the submission of lesser included offenses in non-capital cases.") (citing additional district court

decisions); Bulla v. Lempke, 06 Civ. 1156, 2006 WL 2457945 at *11 (S.D.N.Y. Aug. 25, 2006),

report & rec. adopted, 2007 WL 259935 (S.D.N.Y. Jan. 29, 2007).

   Accordingly, Brown's claim that the trial court erred in failing to charge third degree

assault as a lesser included offense should be DENIED.[29/]

---

[29/] In any event, Brown's claim is without merit because the trial court properly followed New
  York law in refusing to charge third degree assault.  Under New York law, "'[t]here is a two-
                      (continued...)

**IV.    BROWN'S PROSECUTORIAL MISCONDUCT AND JUROR MISCONDUCT HABEAS CLAIMS ARE PROCEDURALLY BARRED FROM HABEAS REVIEW AND IN ANY EVENT WITHOUT MERIT**

Both Brown's habeas claim that "there occurred prosecutorial misconduct" (Dkt. No.

---

[29]/    (...continued)
part test to determine whether a lesser included offense charge should be submitted to a jury. The defendant must first prove that it is impossible to commit the greater crime without necessarily committing the lesser and there must be a reasonable view of the evidence which would support a finding that the defendant committed only the lesser offense.'" Simms v. Moscicki, 06 Civ. 2056, 2006 WL 2466811 at *13 (S.D.N.Y. Aug. 25, 2006) (Peck, M.J.) (quoting People v. Barney, 99 N.Y.2d 367, 371, 756 N.Y.S.2d 132, 135 (2003)), report & rec. adopted, 2007 WL 162295 (S.D.N.Y. Jan. 19, 2007); accord, e.g., People v. Van Norstrand, 85 N.Y.2d 131, 135, 623 N.Y.S.2d 767, 770 (1995); People v. Heide, 84 N.Y.2d 943, 944, 620 N.Y.S.2d 814, 815 (1994); People v. Glover, 57 N.Y.2d 61, 63, 453 N.Y.S.2d 660, 661-62 (1982); see C.P.L. §§ 1.20(37), 300.50(1).

Brown meets the first prong because third degree assault is a lesser included offense of second degree assault.  Penal Law §§ 120.00, 120.05; see, e.g., People v. Galvin, 104 A.D.2d 527, 527, 479 N.Y.S.2d 896, 898 (3d Dep't 1984) ("It is not disputed that assault in the third degree is a lesser included offense of the charged crimes of assault in the first and second degrees under the first tier of the two-tier test set forth in People v. Glover for submission of a lesser included offense to the jury.") (citations omitted), aff'd as modified, 65 N.Y.2d 761, 492 N.Y.S.2d 25 (1985); People v. Price, 99 A.D. 2d 878, 879, 472 N.Y.S.2d 206, 207 (3d Dep't 1984); People v. Johnson, 193 A.D.2d 1116, 1116-17, 598 N.Y.S.2d 641, 642 (4th Dep't), appeal denied, 82 N.Y.2d 721, 602 N.Y.S.2d 818 (1993).

Brown fails the second prong because the trial court properly concluded that there was no reasonable view of the evidence to support a finding that Brown did not use a weapon or a dangerous instrument in assaulting Daniels.  (See page 8 above.)  See, e.g., People v. Hercules, 47 A.D.3d 835, 835, 850 N.Y.S.2d 535, 536 (2d Dep't 2008) ("[T]he court properly denied the request [to charge third degree assault as a lesser included offense of second degree assault], because even when viewing the evidence in the light most favorable to the defendant, no reasonable view of the evidence supported a finding that he assaulted the complaining witness but did not use a deadly weapon or dangerous instrument."); People v. Vaughn, 36 A.D.3d 434, 436, 831 N.Y.S.2d 27, 29 (1st Dep't 2007).

1: Pet. ¶ 13)[30/] and his claim that the trial court erred in not setting aside the verdict after finding juror misconduct (Pet. ¶ 13)[31/] are procedurally barred from habeas review because they were not presented to the New York Court of Appeals.  Moreover, even if the claims were exhausted, they are without merit.

> **A.     Brown's Prosecutorial Misconduct and Juror Misconduct Habeas Claims Are Unexhausted but Deemed Exhausted and Procedurally Barred from Habeas Review**
>
> **1.     The Exhaustion Doctrine:  Background**

Section 2254 codifies the exhaustion requirement, providing that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State. . . ."  28 U.S.C. § 2254(b)(1)(A).[32/]  As the Supreme Court has made clear,

---

[30/]     Brown's pro se appeal brief to the First Department claimed that the prosecutor engaged in misconduct for the following reasons:  (1) introducing altered hospital records; (2) admitting a corkscrew into evidence that was not the same corkscrew recovered from Brown at his arrest; (3) not proving with scientific tests that Brown had actually used the weapon; and (4) failing to charge Brown with weapons possession.  (See Dkt. No. 8: Danzig Aff. Ex. B: Brown Pro Se Supp. 1st Dep't Br. at 5-10; see also pages 19-20 above.)

[31/]     Brown refers to this issue in his habeas petition as "the jury misconduct issue."  (Pet. ¶ 13.)  Brown raised this claim in his counseled direct appeal to the First Department.  (Danzig Aff. Ex. A: Brown 1st Dep't Br. at 27-32; see also page 19 above.)

[32/]     See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999); Rose v. Lundy, 455 U.S. 509, 515-16, 102 S. Ct. 1198, 1201 (1982) ("The exhaustion doctrine existed long before its codification by Congress in 1948" in 28 U.S.C. § 2254.); Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 512 (1971); Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054, 115 S. Ct. 1436 (1995); Pesina v. Johnson, 913
(continued...)

"[t]he exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." Rose v. Lundy, 455 U.S. at 518, 102 S. Ct. at 1203; accord, e.g., O'Sullivan v. Boerckel, 526 U.S. at 845, 119 S. Ct. at 1732.

The Second Circuit determines whether a claim has been exhausted by applying a two-step analysis:

> First, the petitioner must have fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts. . . . Second, having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure [state] appellate review of the denial of that claim.

Diaz v. Coombe, 97 Civ. 1621, 1997 WL 529608 at *3 (S.D.N.Y. June 12, 1997) (Mukasey, D.J. & Peck, M.J.) (quoting Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981)); accord, e.g., O'Sullivan v. Boerckel, 526 U.S. at 843-48, 119 S. Ct. at 1732-34.

"The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney Gen., 696 F.2d at 191.[33/]  The Second Circuit has held that a federal habeas petitioner must have alerted the state appellate court that a federal constitutional claim is at issue. E.g., Cox v. Miller, 296 F.3d at 99; Jones v. Vacco, 126 F.3d at 413-

---

[32/]    (...continued)
F.2d 53, 54 (2d Cir. 1990); Daye v. Attorney Gen., 696 F.2d 186, 190-94 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048, 104 S. Ct. 723 (1984).

[33/]    Accord, e.g., O'Sullivan v. Boerckel, 526 U.S. at 844, 119 S. Ct. at 1732; Picard v. Connor, 404 U.S. at 275-76, 92 S. Ct. at 512; Jones v. Keane, 329 F.3d 290, 294-95 (2d Cir.), cert. denied, 540 U.S. 1046, 124 S. Ct. 804 (2003); Cox v. Miller, 296 F.3d 89, 99 (2d Cir. 2002), cert. denied, 537 U.S. 1192, 123 S. Ct. 1273 (2003); Jones v. Vacco, 126 F.3d 408, 413 (2d Cir. 1997).

14; Grady v. LeFevre, 846 F.2d 862, 864 (2d Cir. 1988); Petrucelli v. Coombe, 735 F.2d 684, 688-89

(2d Cir. 1984); Daye v. Attorney Gen., 696 F.2d at 191.  In Daye, the Second Circuit en banc stated:

> [T]he ways in which a state defendant may fairly present to the state courts the
> constitutional nature of his claim, even without citing chapter and verse of the
> Constitution, include (a) reliance on pertinent federal cases employing constitutional
> analysis, (b) reliance on state cases employing constitutional analysis in like fact
> situations, (c) assertion of the claim in terms so particular as to call to mind a specific
> right protected by the Constitution, and (d) allegation of a pattern of facts that is well
> within the mainstream of constitutional litigation.

Daye v. Attorney Gen., 696 F.2d at 194.[34/]

### 2.    Brown's Prosecutorial Misconduct and Juror Misconduct Claims Were Not Presented to the New York Court of Appeals and thus Are Unexhausted but Deemed Exhausted and Procedurally Barred

On direct appeal, Brown's appellate counsel raised three claims before the First

Department, including that the trial court erred in failing to set aside the verdict because of juror

misconduct.  (See page 19 above.)  Brown's pro se supplemental brief raised additional claims,

including prosecutorial misconduct.  (See pages 19-20 above.)  The First Department ruled that

Brown was not entitled to a new trial based on the juror's conduct, and denied Brown's pro se claims

as "without merit."  People v. Brown, 29 A.D.3d 443, 443-44, 815 N.Y.S.2d 84, 85-86 (1st Dep't

2006).

---

[34/]    Accord, e.g., Smith v. Duncan, 411 F.3d 340, 348 (2d Cir. 2005); Jackson v. Edwards, 404
F.3d 612, 618 (2d Cir. 2005); Rosa v. McCray, 396 F.3d 210, 217-18 (2d Cir.), cert. denied,
126 S. Ct. 215 (2005); St. Helen v. Senkowski, 374 F.3d 181, 182-83 (2d Cir. 2004), cert.
denied, 543 U.S. 1058, 125 S. Ct. 871 (2005); Cox v. Miller, 296 F.3d at 99; Ramirez v.
Attorney Gen., 280 F.3d 87, 95 (2d Cir. 2001); Levine v. Comm'r of Corr. Servs., 44 F.3d
121, 124 (2d Cir. 1995), cert. denied, 520 U.S. 1106, 117 S. Ct. 1112 (1997); Grady v.
LeFevre, 846 F.2d at 864; Garofolo v. Coomb, 804 F.2d 201, 206 (2d Cir. 1986); Petrucelli
v. Coombe, 735 F.2d at 688.

Brown's appellate counsel's June 23, 2006 letter to the New York Court of Appeals seeking leave to appeal presented only two issues for appeal:  (a) the trial judge's refusal to charge the jury with third degree assault; and (b) commencing the jury disqualification hearing before defense counsel's arrival.  (Dkt. No. 8: Danzig Aff. Ex. E: Leave to Appeal Letter at 1-2; see page 21 above.)  Appellate counsel's letter spent two single-spaced pages talking about these claims, then ended with this paragraph:

> In support of this application, Mr. Brown relies on this letter, portions of the trial transcript relevant to the questions of law discussed above, decisions from the trial court regarding the disposition of the case, and the briefs he filed in the Appellate Division,[1/] copies of which are enclosed. . . .
>
> _____
>
> [1/]    In addition, Defendant filed a pro se brief with the Appellate Division, which is enclosed herewtih.

(Leave to Appeal Letter; see page 21 above.)

The Second Circuit has long held, and the Supreme Court confirmed, that "a state prisoner must present his claims to a state supreme [i.e., highest] court in a petition for discretionary review in order to satisfy the exhaustion requirement."  O'Sullivan v. Boerckel, 526 U.S. 838, 839-40, 119 S. Ct. 1728, 173 (1999); accord, e.g., accord, e.g., Rosa v. McCray, 396 F.3d 210, 217 (2d Cir.), cert. denied, 546 U.S. 889, 126 S. Ct. 215 (2005); Galdamez v. Keane, 394 F.3d 73 (2d Cir.), cert. denied, 544 U.S. 1025, 125 S. Ct. 1996 (2005); Calderon v. Keane, 115 Fed. Appx. 455, 457 (2d Cir. 2004); Cotto v. Herbert, 331 F.3d 217, 237 (2d Cir. 2003); Ramirez v. Attorney Gen., 280 F.3d 87, 94 (2d Cir. 2001); Jordan v. LeFevre, 206 F.3d 196, 198 (2d Cir. 2000); Morgan v. Bennett, 204 F.3d 360, 369 (2d Cir.), cert. denied, 531 U.S. 819, 121 S. Ct. 59 (2000); Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994) ("To fulfill the exhaustion requirement, a petitioner must have

presented the substance of his federal claims 'to the highest court of the pertinent state.'"), <u>cert. denied</u>, 514 U.S. 1054, 115 S. Ct. 1436 (1995); <u>Grey</u> v. <u>Hoke</u>, 933 F.2d 117, 119 (2d Cir. 1991) ("a petitioner must present his federal constitutional claims to the highest court of the state before a federal court may consider the merits of the petition"); <u>Pesina</u> v. <u>Johnson</u>, 913 F.2d 53, 54 (2d Cir. 1990) ("We have held that the exhaustion requirement mandates that federal claims be presented to the highest court of the pertinent state before a federal court may consider the petition," citing <u>Daye</u>); <u>Daye</u> v. <u>Attorney Gen.</u>, 696 F.2d 186, 191 n.3 (1982) ("Exhaustion of available state remedies requires presentation of the claim to the highest state court from which a decision can be had.").

A mere reference to Brown's First Department briefs is not sufficient to have exhausted the claims in the New York Court of Appeals, in light of the lengthy discussion of the two separate claims in appellate counsel's leave to appeal letter. In <u>Grey</u> v. <u>Hoke</u>, the petitioner argued one claim in his leave to appeal letter to the New York Court of Appeals, and also attached his Appellate Division briefs, which had raised that issue plus two others. 933 F.2d at 120. The Second Circuit held that the claims referred to only in his attached briefs were not exhausted:

> Petitioner argues that by attaching his Appellate Division brief to his letter application to the Court of Appeals, he presented that court with an opportunity to rule on his sentencing and prosecutorial misconduct claims. He concedes, however, that his letter application requested that the Court of Appeals review only the search and seizure claim. The letter made no mention of the sentencing and prosecutorial misconduct claims. Under these circumstances, we disagree with petitioner's assertion that the Court of Appeals was presented with his sentencing and prosecutorial misconduct claims.
>
> <u>The fair import of petitioner's submission to the Court of Appeals, consisting of his brief to the Appellate Division that raised three claims and a letter to the Court of Appeals arguing only one of them, was that the other two had been abandoned. The only possible indication that the other two claims were being pressed was the inclusion of a lengthy brief originally submitted to another court. This did not fairly apprise the court of the two claims.</u>

> We decline to presume that the New York Court of Appeals has "a duty to look for a needle in a paper haystack." For a federal court to hold that a state court had the opportunity to rule on a constitutional claim as to which no ruling was requested, and then to rule on the merits of the claim itself, would undermine the very considerations of comity that the rules of exhaustion were designed to protect.

Grey v. Hoke, 933 F.2d at 120 (emphasis added & citations omitted).

Subsequent to Grey v. Hoke, in Jordan v. LeFevre, 22 F. Supp. 2d 259, 267 (S.D.N.Y. 1998) (Mukasey, D.J. & Peck, M.J.), aff'd on this ground, rev'd on other grounds, 206 F.3d 196, 198-99 (2d Cir. 2000), the petitioner clearly raised his Batson claim in his letter seeking leave to appeal to the New York Court of Appeals, but, "[a]fter discussing the Batson issue at length, Jordan's counsel asked for leave to appeal '[f]or all of these reasons and the reasons set forth in his Appellate Division briefs,' and noted that '[i]n support of his application, Mr. Jordan relies on this letter and on the briefs he filed in the Appellate Division.'" Jordan v. LeFevre, 22 F. Supp. 2d at 267. This Court held the non-Batson claims to be unexhausted, and the Second Circuit affirmed that view, explaining that "arguing one claim in his letter while attaching an appellate brief without explicitly alerting the state court to each claim raised does not fairly present such claims for purposes of the exhaustion requirement underlying federal habeas jurisdiction . . . . Counsel may not transfer to the state courts the duty to comb through an applicant's appellate brief to seek and find arguments not expressly pointed out in the application for leave." Jordan v. LeFevre, 206 F.3d at 199 (emphasis added). The Second Circuit affirmed the exhaustion issue "substantially for the reasons set out in [this Court's] thorough opinion and order . . . . Jordan v. LeFevre, 22 F. Supp. 2d 259, 266-69

(S.D.N.Y.1998)."  Jordan v. LeFevre, 206 F.3d at 199.<u>35/</u>

---

<u>35/</u>    Another Second Circuit case reviewing Grey v. Hoke, Morgan v. Bennett, does not require a different conclusion.  In Morgan, the petitioner's counsel did not argue any of the petitioner's claims in detail in his leave to appeal letter to the New York Court of Appeals. 204 F.3d at 369.  Instead, petitioner's counsel's letter commenced with a brief description of the judgment of conviction and the Appellate Division's affirmance of same.  Id.  The letter then concluded with the following language:

> I am enclosing copies of the briefs filed in the Appellate Division and that Court's order and opinion.  Please advise me of the judge designated to decide this application so that I may send that judge a follow-up letter in support of the application.  <u>We request this Court to consider and review all issues outlined in defendant-appellant's brief and pro se supplemental brief.</u>

Morgan v. Bennett, 204 F.3d at 369-70 (emphasis added).  After he was informed of the assigned judge, Morgan's counsel sent the assigned judge a follow-up letter -- discussing one issue in detail and drawing the Court's attention to another issue raised in the petitioner's pro se brief.  Id. at 370.  The Second Circuit held that counsel's statement in her initial letter to the Court of Appeals which expressly "'request[ed] this Court to consider and review all issues outlined in defendant-appellant's brief and pro se supplemental brief' submitted to the Appellate Division" was "sufficiently specific to alert the Court of Appeals that Morgan sought review of all of the issues raised in his pro se supplemental Appellate Division brief." Id. at 370-71.  In distinguishing Morgan in Jordan, the Second Circuit made clear that it was the explicit request to review all issues in the Appellate Division briefs that made the difference: "Had appellant more clearly stated that he was pressing all of the claims raised in the attached brief, or had his letter made no argument in detail but rather only 'request[ed] that the Court of Appeals] consider and review all issues outlined in defendant-appellant's brief, 'the result here would be different and the remaining claims would have been fairly presented to the Court of Appeals."  Jordan v. LeFevre, 206 F.3d at 199 (citing Morgan v. Bennett, 204 F.3d at 370-71).  Here, there was no such request to review all of the issues in Brown's counseled and/or pro se First Department briefs.  Compare, e.g., Galdamez v. Keane, 394 F.3d at 75-76 (When petitioner enclosed his appellate briefs, but did not argue any specific claim to the Court of Appeals, petitioner had fairly presented all the claims in those briefs.); Delucia v. West, 04 Civ. 3605, 2005 WL 1981708 at *5 (S.D.N.Y. Aug. 17, 2005) (Petitioner had adequately put the Court of Appeals on notice that petitioner meant to bring all the claims in his attached briefs when, in his leave letter, he argued one claim as his "primary" issue and added that leave was requested for the reasons stated in the leave letter, "'as well as those cited in appellant's main brief.'"); Benitez v. Green, 02 Civ. 63321, 2005
(continued...)

Other Second Circuit[36/] and district court decisions within the Circuit[37/] have applied

---

[35/]    (...continued)
WL 289753 at *7-8 (S.D.N.Y. Jan. 31, 2005) (Petitioner had adequately exhausted his claims when he asked the Court of Appeals to consider all the issues he had raised before the App. Div. although second leave letter "stressed another issue.").

[36/]    See, e.g., Ramirez v. Attorney Gen., 222 Fed. Appx. 80, 81-82 (2d Cir. 2007) (denying review of petitioner's claim where a "bare citation" to a page of App. Div. briefs in petitioner's application for leave to appeal did not provide a "sufficient factual basis for that claim"); Brown v. Senkowski, 152 Fed. Appx. 15, 18 (2d Cir. 2005) (Petitioner's inclusion of App. Div. briefs to the Court of Appeals "did not alert the Court of Appeals as to the federal nature of his claim"), cert. denied, 546 U.S. 1189, 126 S. Ct. 1375 (2006); Smith v. Duncan, 411 F.3d 340, 345 (2d Cir. 2005) (following Grey v. Hoke in denying petitioner's claim because he had not raised it in his leave to appeal letters to the Court of Appeals although he had attached his App. Div. briefs); Diguglielmo v. Smith, 366 F.3d 130, 134-135 (2d Cir. 2004) (declining petitioner's request to overrule the Grey v. Hoke and Jordan v. LeFevre principle that merely attaching an appellate brief without explicitly alerting the New York Court of Appeals to each claim raised does not fairly present such claims for exhaustion purposes); Diguglielmo v. Senkowski, 42 Fed. Appx. 492, 495 (2d Cir. 2002) (leave application that "fully argued several state law claims and then made only a passing reference to other arguments raised in supplemental materials" was "inadequate to alert the New York Court of Appeals to other claims found in his Appellate Division materials" and therefore "'[did] not fairly present such claims for purposes of the exhaustion requirement underlying federal habeas jurisdiction.'") (quoting Jordan v. LeFevre, 206 F.3d at 199); Ramirez v. Attorney Gen., 280 F.3d at 97 (citation to petitioner's attached App. Div. brief referring only to "this issue" "was not, therefore, a request 'to consider and review' other issues raised in the referenced points of the brief." "References to attached briefs without more will preserve issues only if the Court of Appeals is clearly informed that the reference is asserting issues in those briefs as bases for granted leave to appeal.").

[37/]    See, e.g., Hornedo v. Artus, No. 04-CV-3201, 2008 WL 346360 at *9 n.11 (E.D.N.Y. Feb. 6, 2008) (petitioner did not fulfill the exhaustion requirement by merely attaching his App. Div. briefs to his application to the Court of Appeals); Bumpus v. Superintendent of Clinton Corr. Facility, 507 F. Supp. 2d 246, 260 (E.D.N.Y. 2007) (where leave letter addressed one claim at length, other claims in App. Div. briefs not fairly presented to Court of Appeals); Marshall v. McLaughlin, 04 Civ. 10154, 2007 WL 2438380 at *7 (S.D.N.Y. Aug. 24, 2007) (following Jordan); Bailey v. Ercole, 06 Civ. 5811, 2007 WL 4707738 at *11 (S.D.N.Y. Aug. 17, 2007) (merely enclosing App. Div. briefs in leave letter arguing only one claim does
(continued...)

37/    (...continued)

not fairly apprise the Court of Appeals that petitioner means to bring all the claims raised in his briefs); Chung v. Filion, No. 03-CV-1913, 2007 WL 749725 at *3 (E.D.N.Y. Mar. 7, 2007) ("Petitioner's letters plainly demonstrate that the New York State Court of Appeals did not have a fair opportunity to consider his claims" when petitioner argued one claim and only made a passing reference to his attached briefs); Fabricio v. Artus, 06 Civ. 2049, 2007 WL 119462 at *4 (S.D.N.Y. Jan. 11, 2007) ("Case law makes clear that where a defendant seeking leave to appeal addresses a specific issue or issues in his leave letter, the mere enclosure of the Appellate Division briefs is insufficient to constitute exhaustion of any additional issues."); Lopez v. Fischer, 05 Civ. 2558, 2006 WL 2996548 at *5-6 (S.D.N.Y. Oct. 16, 2006); McAlpine v. Poole, 02 Civ. 1081, 2006 WL 2827636 at *7-8 (N.D.N.Y. Sept. 29, 2006); Oquendo v. Senkowski, 452 F. Supp. 2d 359, 367 (S.D.N.Y. 2006) ("When a petitioner's appeal application letter mentions some of his claims while an attached brief details other[s], the claims not mentioned in the application letter are not fairly presented," even where App. Div. briefs are enclosed.); Williams v. Phillips, 433 F. Supp. 2d 303, 317-18 (W.D.N.Y. 2006); Rodriguez v. Mazzuca, 05 Civ. 474, 2005 WL 2298162 at *4 (S.D.N.Y. Sept. 19, 2005); Martinez v. Kelly, 01 Civ. 11570, 2005 WL 1863854 at *7 (S.D.N.Y. Aug. 4, 2005), aff'd, No. 05-4714, 253 Fed. Appx. 127, 2007 WL 3256830 (2d Cir. Nov. 6, 2007); Gillespie v. Miller, 04 Civ. 0295, 2004 WL 1689735 at *11 (S.D.N.Y. July 29, 2004) (Peck, M.J.) (Reference to petitioner's supplemental pro se 1st Dep't brief "is not sufficient to have exhausted the claims in the New York Court of Appeals, especially in light of the lengthy discussion of the two separate claims by his appellate counsel."); Figueroa v. Greiner, 02 Civ. 2126, 2002 WL 31356512 at *12-13 (S.D.N.Y. Oct. 18, 2002) (Peck, M.J.) (merely attaching and mentioning 1st Dep't brief is not sufficient to exhaust claims in the New York Court of Appeals especially in light of lengthy discussion of other claim); Jamison v. Berbary, 01 Civ. 5547, 2002 WL 1000283 at *17-19 (S.D.N.Y. May 15, 2002) (Peck, M.J.) (& cases cited therein) (petitioner's "passing reference to his First Department briefs in his leave application" did not fairly present the claim for exhaustion purposes); Bailey v. People, 01 Civ. 1179, 2001 WL 640803 at *4-5 (S.D.N.Y. June 8, 2001) (Peck, M.J.) (petitioner's "mere enclosure of his Appellate Division briefs in his leave to appeal application, while discussing a single claim at length, is not sufficient" to have exhausted his other claims); Cook v. Pearlman, 212 F. Supp. 2d 258, 263 (S.D.N.Y. 2002) (where petitioner's attached appellate brief raised three grounds for reversal, but his application only argued one of those grounds, the other two claims were not fairly presented to the Court of Appeals); Alston v. Senkowski, 210 F. Supp. 2d 413, 417-18 (S.D.N.Y. 2002) (petitioner failed to fairly present his four constitutional claims to the Court of Appeals for exhaustion purposes when "his attorney merely made reference to the fact that he had enclosed the Appellate Division briefs [in his leave application] and stated that a further

(continued...)

37/ (...continued)

letter would follow"); Valdez v. Mazzuca, No. 00-CV-4961, 2002 WL 1364089 at * 2 (E.D.N.Y. June 21, 2002) ("petitioner did not fairly present his ineffective assistance of trial counsel claim to the New York Court of Appeals because petitioner's application for leave to appeal discusses another claim but does not mention the ineffective assistance of trial counsel claim"); Fernandez v. Artuz, 97 Civ. 2989, 2002 WL 977372 at * 2 (S.D.N.Y. May 9, 2002) (Petitioner failed to exhaust all other claims when he "only argued his confrontation claim to the New York Court of Appeals[,] . . . did not refer to any other claim in his leave application[, and] . . . merely stated that the Court of Appeals should grant his leave application '[f]or all of the foregoing reasons stated in appellant's brief.'"), aff'd, No. 02-2399, 82 Fed. Appx. 48, 2003 WL 22454487 (2d Cir. Oct. 29, 2003), cert. denied, 541 U.S. 950, 124 S. Ct. 1687 (2004); Simpson v. Miller, No. 97-CV-2203, 2002 WL 923913 at *6 (E.D.N.Y. Apr. 30, 2002) (because "petitioner's application for leave to appeal discuss[ed] two other claims but [did] not mention the improper jury instruction and prosecutorial misconduct claims[,]" the latter two claims were not fairly presented to the Court of Appeals); Campos v. Portuondo, 193 F. Supp. 2d 735, 745 (S.D.N.Y. 2002) (Petitioner's "discussion of his single claim at length along with the submission attaching a brief containing additional claims '[did] not fairly apprise the state court of those remaining claims.'"), aff'd, 320 F.3d 185 (2d Cir.), cert. denied, 124 S. Ct. 413 (2003); Kirby v. Senkowski, 141 F. Supp. 2d 383, 391-93 (S.D.N.Y. 2001) (sufficiency of evidence claim unexhausted where petitioner submitted App. Div. briefs to Court of Appeals but failed to mention that claim anywhere in follow up leave letter which focused on other unrelated claims), aff'd, No. 01-2347, 61 Fed. Appx. 765, 2003 WL 1973614 (2d Cir. Apr. 23, 2003); Black v. McGinnis, 99 Civ. 0755, 2001 WL 209916 at *3-4 (S.D.N.Y. Mar. 1, 2001) (where petitioner's letter requested leave to appeal and was accompanied by App. Div. briefs but did not identify any issue for appeal, claims were unexhausted); Snead v. Artuz, 99 Civ. 2406, 2001 WL 199409 at *3-4 (S.D.N.Y. Feb. 28, 2001) (where petitioner raised only one issue in leave to appeal letter, other issues unexhausted even though discussed in App. Div. brief accompanying letter); Mendez v. Artuz, 98 Civ. 2652, 2000 WL 722613 at *24-25 (S.D.N.Y. June 6, 2000) (Peck, M.J.) (claims not exhausted where the application for leave to appeal to the Court of Appeals merely refers to the App. Div. briefs without further elaboration of the claims); Perez v. Greiner, 99 Civ. 11806, 2000 WL 915114 at *3-6 (S.D.N.Y. July 5, 2000) (Peck, M.J.) (lengthy discussion of one issue plus submission of 1st Dep't briefs not sufficient to exhaust the issues raised only in the brief); DeLeon v. Hanslmaier, No. CV-94-5512, 1996 WL 31232 at *3 (E.D.N.Y. Jan. 19, 1996) ("The fact that petitioner attached his brief submitted to the Appellate Division [with his application for leave to appeal to the Court of Appeals] is not enough to satisfy the exhaustion requirement."), aff'd, No. 96-2210, 104 F.3d 355 (table) (2d Cir. 1996); Brooks v. Kelly, No. 88-CV-0631, 1993 WL 350188 at

(continued...)

Grey and Jordan to situations where, as here, the defendant discussed one or more issues at length and also referred to enclosed Appellate Division briefs, without specifically asking the Court of Appeals to review other issues in the enclosed briefs.

Here, as in Grey, Jordan and their progeny, Brown's counsel merely made a passing reference to Brown's First Department counseled brief and an even more passing, footnoted reference to Brown's supplemental pro se First Department brief in his leave application that discussed two claims in great detail. Such an indirect reference is insufficient to put the New York Court of Appeals on notice that it should review the additional claims in Brown's First Department briefs as well, and would require state courts to look for a "needle in a hay stack" while a petitioner argues "one claim in his letter while attaching an appellate brief without explicitly alerting the state court to each claim." Jordan v. LeFevre, 206 F. 3d at 198-99.

Thus, Brown did not fairly present the prosecutorial misconduct and juror misconduct claims to the New York Court of Appeals, and, as such, they are unexhausted for purposes of habeas review.

To avoid a procedural default on his unexhausted claim, Brown would have to "show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the

---

37/     (...continued)
*3  (W.D.N.Y. Sept. 10, 1993) ("A petitioner is not deemed to have presented a claim to the New York State Court of Appeals simply by attaching an Appellate Division brief without further elaboration of the claim in the petition for leave to appeal. [Citing Grey v. Hoke.] Further, a petitioner has not fulfilled the exhaustion requirement by having made in the application for leave to appeal general reference to claims in the attached appellate brief meriting review.") (citations omitted).

federal claims will result in a 'fundamental miscarriage of justice,'" i.e., a showing of "actual innocence." Harris v. Reed, 489 U.S. 255, 262, 109 S. Ct. 1038, 1043 (1989) (citations omitted); accord, e.g., Schlup v. Delo, 513 U.S. 298, 324-27, 115 S. Ct. 851, 865-67 (1995); Coleman v. Thompson, 501 U.S. 722, 735, 111 S. Ct. 2546, 2557 (1991).[38/]

Brown has not alleged cause and prejudice nor has he made a showing of actual innocence. Thus, Brown's unexhausted prosecutorial misconduct and juror misconduct claims should be DENIED as unexhausted but deemed exhausted and procedurally barred from habeas review.

**B.    In Any Event, Brown's Prosecutorial Misconduct and Juror Misconduct Claims Are Without Merit**

### 1.    The Prosecution Did not Engage in Misconduct

In Brown's habeas petition, Brown alleges "there occurred prosecutorial misconduct in this case." (Dkt. No.1: Pet. ¶ 13.) Brown's supplemental pro se First Department brief argued that the prosecutor engaged in misconduct for: (1) introducing altered hospital records; (2) admitting a corkscrew into evidence that was not the same corkscrew recovered from Brown at his arrest; (3) not proving with scientific tests that Brown had actually used the weapon; and (4) failing to charge Brown with weapons possession. (Dkt. No. 8: Danzig Aff. Ex. B: Brown Pro Se Supp. 1st Dep't Br.

---

[38/]    See also, e.g., Messiah v. Duncan, 435 F.3d 186, 195 (2d Cir. 2006); Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005); Smith v. Duncan, 411 F.3d at 347; DeBerry v. Portuondo, 403 F.3d 57, 64 (2d Cir.), cert. denied, 126 S. Ct. 225 (2005); St. Helen v. Senkowski, 374 F.3d at 183-84; DiGuglielmo v. Smith, 366 F.3d at 135;  Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997); Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996), cert. denied, 520 U.S. 1108, 117 S. Ct. 1116 (1997); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).

53

at 5-10; see page 20 above.)  The First Department held that "Defendant's pro se claims are without

merit."  People v. Brown, 29 A.D.3d 443, 444, 815 N.Y.S.2d 84, 86 (1st Dep't), appeal denied, 7

N.Y.3d 846, 823 N.Y.S.2d 775 (2006); see page 21 above.

        Prosecutorial misconduct violates a defendant's due process rights only when it is of

"sufficient significance to result in the denial of the defendant's right to a fair trial."  Greer v. Miller,

483 U.S. 756, 765, 107 S. Ct. 3102, 3109 (1987); accord, e.g., United States v. Best, 142 Fed. Appx.

500, 501 (2d Cir.) ("We must examine whether the prosecutor's actions 'so infected the trial with

unfairness as to make the resulting conviction a denial of due process.'"), cert. denied, 126 S. Ct. 770

(2005); United States v. Muja, 102 Fed. Appx. 212, 216 (2d Cir. 2004) ("'It is a rare case in which

improper comments in a prosecutor's summation are so prejudicial that a new trial is required.'");

United States v. Coriaty, 300 F.3d 244, 255 (2d Cir. 2002) (Even on direct federal appeal, "[b]efore

a conviction will be reversed, a prosecutor's comments upon summation must 'so infect[] the trial

with unfairness as to make the resulting conviction a denial of due process.'  The defendant must

point to 'egregious misconduct.'") (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 647, 94

S. Ct. 1868, 1871, 1873 (1974)); United States v. Elias, 285 F.3d 183, 190 (2d Cir.) ("To warrant

reversal, the prosecutorial misconduct must cause the defendant substantial prejudice by so infecting

the trial with unfairness as to make the resulting conviction a denial of due process.") (internal

quotations omitted), cert. denied, 537 U.S. 988, 123 S. Ct. 430 (2002).[39/]

---

[39/]    See also, e.g., United States v. McCarthy, 54 F.3d 51, 55 (2d Cir. 1995), cert. denied, 516
U.S. 880, 116 S. Ct. 214 (1995); Blissett v. LeFevre, 924 F.2d 434, 440 (2d Cir.), cert.
denied, 502 U.S. 852, 112 S. Ct. 158 (1991); Brown v. Schultz, 03 Civ. 3320, 2006 WL
                          (continued...)

To properly evaluate the prosecution's actions, the alleged misdeeds must be placed in context, and "[t]he severity of the misconduct, curative measures, and the certainty of conviction absent the misconduct are all relevant to the inquiry." Blissett v. LeFevre, 924 F.2d at 440; accord, e.g., Greer v. Miller, 483 U.S. at 766, 107 S. Ct. at 3109 ("it is important 'as an initial matter to place th[e] remar[k] in context'").[40]

---

[39]    (...continued)
156983 at *10 (S.D.N.Y. Jan. 18, 2006); Trinidad v. Annetts, 04 Civ. 9685, 2005 WL 2792398 at *4-5 (S.D.N.Y. Oct. 26, 2005); Readdon v. Senkowski, 96 Civ. 4722, 1998 WL 720682 at *4 (S.D.N.Y. Oct. 13, 1998); Hurd v. Keane, 97 Civ. 2991, 1997 WL 582825 at *4 (S.D.N.Y. Sept. 19, 1997); Beverly v. Walker, 899 F. Supp. 900, 911 (N.D.N.Y. 1995), aff'd, 118 F.3d 900 (2d Cir.), cert. denied, 522 U.S. 883, 118 S. Ct. 211 (1997); Washington v. Walker, 89 Civ. 7841, 1994 WL 391947 at *3 (S.D.N.Y. July 28, 1994) ("Even where a prosecutor's remarks are improper, 'constitutional error occurs only when the prosecutorial remarks were so prejudicial that they rendered the trial in question fundamentally unfair.'") (quoting Floyd v. Meachum, 907 F.2d 347, 355 (2d Cir. 1990) (quoting Garofolo v. Coomb, 804 F.2d 201, 206 (2d Cir. 1986))).

In the case of allegedly improper prosecutorial remarks during summation, "the law is settled that 'federal habeas relief is not available on the basis of improper prosecutorial statements at trial unless the errors, in context of the summation as a whole, were so fundamentally unfair as to deny petitioner a fair trial.'" Tejeda v. Senkowski, 92 Civ. 3012, 1993 WL 213036 at *3 (S.D.N.Y. June 16, 1993), aff'd mem., 23 F.3d 397 (2d Cir.), cert. denied, 513 U.S. 887, 115 S. Ct. 230 (1994); see, e.g., Donnelly v. DeChristoforo, 416 U.S. at 647; Floyd v. Meachum, 907 F.2d at 355 (quoting Garofolo v. Coomb, 804 F.2d at 205); Edmonds v. McGinnis, 11 F. Supp. 2d 427, 437 (S.D.N.Y. 1998); Gaiter v. Lord, 917 F. Supp. 145, 153 (E.D.N.Y. 1996); Jones v. Kuhlmann, 93 Civ. 5963, 1995 WL 733649 at *4 (S.D.N.Y. Dec. 12, 1995).

[40]    See also, e.g., United States v. Best, 142 Fed. Appx. at 501; United States v. McCarthy, 54 F.3d at 55; United States v. Friedman, 909 F.2d 705, 709 (2d Cir. 1990); United States v. Biasucci, 786 F.2d 504, 514 (2d Cir.), cert. denied, 479 U.S. 827, 107 S. Ct. 104 (1986); Brown v. Schultz, 2006 WL 156983 at *10; Trinidad v. Annetts, 2005 WL 2792398 at *5; Hurd v. Keane, 1997 WL 582825 at *4; Beverly v. Walker, 899 F. Supp. at 911.

55

Brown claims the prosecution engaged in misconduct by altering and offering into evidence the victim's medical records.  (Brown Pro Se Supp. 1st Dep't Br. at 6.)  Brown points to inconsistencies in the medical records, including the time the hospital treated Daniels and the payment it received.  (Id. at 6-7.)  The medical records, however, were not introduced into evidence by the prosecution; defense counsel introduced the medical records into evidence.  (See page 6 n.6 above.)  This part of the prosecutorial misconduct claim therefore is frivolous.

Brown also claims that the corkscrew the prosecutor offered into evidence was not the one recovered from him upon arrest.  (Brown Pro Se Supp. 1st Dep't Br. at 7-8.)  Officer Martiny unequivocally testified that he recovered the corkscrew admitted into evidence upon Brown's arrest.  (See page 7 above.)  It was up to Brown to present evidence that Officer Martiny lied or that the prosecutor knew the officer was not telling the truth.  Brown presented no such evidence at trial, on appeal or on this habeas petition.  It was for the jury to determine if Officer Martiny was telling the truth about the corkscrew.

Brown further alleges prosecutorial misconduct in the failure to use scientific tests and the failure to charge Brown with weapons possession.  (See Brown Pro Se Supp. 1st Dep't Br. at 8-9.)  The prosecution has the discretion to determine what evidence it needs to introduce to prove the charges brought. A prosecutor's failure to conduct forensic tests does not violate a federal constitutional right.  See, e.g., Arizona v. Youngblood, 488 U.S. 51, 58-59, 109 S. Ct. 333, 338

(1988).[41/]  Nor was the prosecutor required to bring all potential charges arising out of the criminal event; prosecutors have charging discretion.

Brown has not demonstrated  that the prosecutor engaged in any misconduct, much less misconduct that resulted "in the denial of the defendant's right to a fair trial."  Greer v. Miller, 483 U.S. at 765, 107 S. Ct. at 3109.  The First Department's decision that this issue was meritless was not contrary to, or an unreasonable application of, Supreme Court law.

Brown's claim of prosecutorial misconduct should be DENIED as procedurally barred and in any event meritless.

### 2.    The Trial Court Properly Upheld the Verdict After Conducting the Juror Disqualification Hearing

Brown's "juror misconduct" claim asserts that the trial court should have set aside the verdict upon discovering that a juror had a prior relationship with defense counsel.  (Dkt. No. 1: Pet. ¶ 13; see Dkt. No. 8: Danzig Aff. Ex. A: Brown 1st Dep't Br. at 27-32.)  This claim stems from Justice McLaughlin's post-trial determination that a juror's relationship with defense attorney Bari "did not prejudice defendant or otherwise compromise the fairness of the trial."  (See page 19 above.)

---

[41/]    See also, e.g., Venticinque v. Burge, No. CV-04-3411, 2005 WL 3369093 at *5 (E.D.N.Y. Dec. 12, 2005) (Rejecting petitioner's claim that he was denied due process "because the prosecutor failed to conduct DNA or other forensic analyses on the knife that was used in the underlying assault," since "the prosecutor's failure to conduct forensic tests does not violate a federal right," citing Arizona v. Youngblood)); Johnson v. New York, No. 02-CV-3752, 03-Misc.-0066, 2003 WL 23198785 at *14 (E.D.N.Y. Nov. 5, 2003) (Weinstein, D.J.) ("The People were not constitutionally mandated to perform additional forensic tests on the evidence in this case. . . ."); Smith v. Edwards, 98 Civ. 7962, 2000 WL709005 at *6 (S.D.N.Y. May 31, 2000) ("[T]here is no due process requirement that the government use any particular investigatory tool, including quantitative testing [such as DNA testing], to secure exculpatory evidence.").

On direct appeal, the First Department held that "[t]he [trial] court . . . properly concluded there was no basis upon which to set aside the verdict."  <u>People</u> v. <u>Brown</u>, 29 A.D.3d 443, 443-44, 815 N.Y.S.2d 84, 85-86 (1st Dep't), <u>appeal denied</u>, 7 N.Y.3d 846, 823 N.Y.S.2d 775 (2006); <u>see</u> pages 20-21 above.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed."  U.S. Const. Amend. VI, § 2, cl. 2.<u>42/</u>  Where "there is clear, strong, substantial and incontrovertible evidence, that a specific, non-speculative impropriety has occurred which could have prejudiced the trial of the defendant," courts must conduct a post-trial hearing.  <u>United States</u> v. <u>Moon</u>, 718 F.3d at 1234 (citation omitted).<u>43/</u>  At the hearing, the trial court should hear the facts and circumstances of the alleged juror partiality to determine whether prejudice to the defendant warrants a new trial.  <u>See</u> <u>Ianniello</u> v. <u>United States</u>, 866 F.2d at 543 ("It will be up

---

<u>42/</u>   <u>See, e.g.</u>, <u>Irvin</u> v. <u>Dowd</u>, 366 U.S. 717, 722, 81 S. Ct. 1639, 1642 (1961) ("[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors."); <u>United States</u> v. <u>Moon</u>, 718 F.3d 1210, 1217-19 (2d Cir. 1983); <u>United States</u> v. <u>Moten</u>, 582 F.2d 654, 664 (2d Cir. 1978) ("the defendant has a right to a trial by an impartial jury, unprejudiced by extraneous influence"); <u>United States</u> v. <u>Bloeth</u>, 313 F.2d 364, 371-72 (2d Cir. 1963); <u>Vasquez</u> v. <u>Walsh</u>, 06 Civ. 3112 2008 WL 619043 at *4 (S.D.N.Y. Mar. 5, 2008).

<u>43/</u>   <u>See also, e.g.</u>, <u>Smith</u> v. <u>Phillips</u>, 455 U.S. 209, 215, 102 S. Ct. 940, 945 (1982) (The Supreme Court "has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias."); <u>United States</u> v. <u>Vitale</u>, 459 F.3d 190, 197 (2d Cir. 2006) ("[A] trial court is required to hold a post-trial jury hearing when reasonable grounds for investigation exist."); <u>United States</u> v. <u>Schwarz</u>, 283 F.3d 76, 98 (2d Cir. 2002); <u>United States</u> v. <u>Ianniello</u>, 866 F.2d 540, 543 (2d Cir. 1989) (A "post-trial jury hearing must be held when a party comes forward with 'clear, strong, substantial and incontrovertible evidence . . . that a specific, non-speculative impropriety has occurred.'").

to the [trial] court in the first instance to determine what occurred [regarding juror misconduct] and to decide whether a new trial is necessary.").[44/]

The Second Circuit requires that "[o]n § 2254 review, the state trial court is entitled to a presumption of correctness with respect to its conclusion that the jury was impartial." Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 813 (2d Cir. 2000); accord, e.g., Thomas v. Fischer, 03 Civ. 5388, 2004 WL 725636 at *8 (S.D.N.Y. Apr. 5, 2004); Booker v. Girdich, 262 F. Supp. 2d 264, 268 (S.D.N.Y. 2003). Further, "the Supreme Court has made it clear that 'the trial court's findings of impartiality [may] be overturned only for "manifest error."'" Knapp v. Leonardo, 46 F.3d 170, 176 (2d Cir.) (quoting Patton v. Yount, 467 U.S. 1025, 1031, 104 S. Ct. 2885, 2889 (1984)), cert. denied, 515 U.S. 1136, 115 S. Ct. 2566 (1995); accord, e.g., Fama v. Comm'r of Corr. Servs., 235 F.3d at 813; Booker v. Girdich, 262 F. Supp. 2d at 268. Thus, "'[t]he trial judge must be given wide

---

[44/]    See also, e.g., Smith v. Phillips, 455 U.S. at 217, 102 S. Ct. at 947 ("[D]ue process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen."); Remmer v. United States, 347 U.S. 227, 229-30, 74 S. Ct. 450, 451 (1954) (the trial court should conduct a hearing to determine whether juror misconduct occurred and if so whether it prejudiced the defendant); United States v. Vitale, 459 F.3d at 197 ("'[I]t is up to the trial judge to determine the effect of prejudicial occurrences, and the reviewing court's concern is to determine only whether the trial judge abused his discretion when so deciding.'"); United States v. Moon, 718 F.2d at 1235 ("It is up to the trial judge to determine the effect of potentially prejudicial occurrences."); Colon v. Artuz, 09 Civ. 6368, 1999 WL 341996 at *8-9 (S.D.N.Y. Apr. 13, 1999) ("The [state] trial judge must be given wide discretion to decide upon the appropriate course to take in view of his or her personal observations of the jurors and the parties." "[T]he fact question of whether jurors [were improperly influenced] 'must be determined, in the first instance, by state courts and deferred to, in the absence of "convincing evidence" to the contrary, by the federal courts.'").

discretion to decide upon the appropriate course to take,' given his or her unique ability to personally observe the jurors in question." <u>Thomas</u> v. <u>Fischer</u>, 2004 WL 725636 at *7; <u>see also</u>, <u>e.g.</u>, <u>Booker</u> v. <u>Girdich</u>, 262 F. Supp. 2d at 268; <u>Diaz</u> v. <u>Mazzuca</u>, 00 Civ. 4383, 2001 WL 170662 at *3 (S.D.N.Y. Feb. 21, 2001).

Even before the AEDPA's enactment, the Supreme Court explained that there are "good reasons to apply the statutory presumption of correctness to the trial court's resolution of these questions":

> There are good reasons to apply the statutory presumption of correctness to the trial court's resolution of these questions. First, the determination has been made only after an often extended voir dire proceeding designed specifically to identify biased veniremen. It is fair to assume that the method we have relied on since the beginning, usually identifies bias. Second, the determination is essentially one of credibility, and therefore largely one of demeanor. As we have said on numerous occasions, the trial court's resolution of such questions is entitled, even on direct appeal, to "special deference." The respect paid such findings in a habeas proceeding certainly should be no less.

<u>Patton</u> v. <u>Yount</u>, 467 U.S. at 1038, 104 S. Ct. at 2892 (citations & footnote omitted); <u>see also</u>, <u>e.g.</u>, <u>Smith</u> v. <u>Phillips</u>, 455 U.S. at 218, 102 S. Ct. at 946.

Justice McLaughlin did not abuse his discretion by allowing the verdict to stand. After the trial concluded, upon learning of possible juror partiality, Justice McLaughlin conducted a post-trial juror disqualification hearing. (<u>See</u> pages 13-18 above.) At the hearing, Juror Salerno testified that he had not disclosed his prior relationship with defense attorney Bari earlier because he did not think it was relevant. (<u>See</u> page 16 above.) Juror Salerno testified that his prior relationship had no impact on his deliberations in the case. (<u>See</u> page 17 above.) Juror Scid testified that Juror Salerno's relationship with defense attorney Bari had no effect on the jury's verdict, which

60

they rendered before Juror Salerno disclosed his prior relationship with Bari.  (See pages 14-15 above.)  Justice McLaughlin ruled that Juror Salerno's prior relationship with Bari did not constitute grounds for setting aside Brown's conviction, since Juror Salerno's prior relationship had not affected his or the jury's deliberations. (See pages 18-19 above.)

Brown's claim that the trial court erred in failing to set aside the verdict based on juror misconduct should be <u>DENIED</u> on the grounds that is both unexhausted and procedurally barred and in any event is without merit.

## V.    BROWN'S INEFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSEL CLAIMS SHOULD BE DENIED

### A.    The Strickland v. Washington Standard on Ineffective Assistance of Counsel

In <u>Strickland</u> v. <u>Washington</u>, 466 U.S. 668, 104 S. Ct. 2052 (1984), the Supreme Court announced a two-part test to determine if counsel's assistance was ineffective:  "First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  <u>Id</u>. at 687, 104 S. Ct. at 2064.[45/]  This performance is to be judged by an objective standard of reasonableness.  <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 688, 104 S. Ct. at 2064.[46/]

---

[45/]    <u>Accord</u>, <u>e.g.</u>, <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. 510, 521, 123 S. Ct. 2527, 2535 (2003); <u>Bell</u> v. <u>Miller</u>, 500 F.3d 149, 156-57 (2d Cir. 2007); <u>Henry</u> v. <u>Poole</u>, 409 F.3d 48, 62-63 (2d Cir. 2005), <u>cert. denied</u>, 547 U.S. 1040, 126 S. Ct. 1622 (2006).

[46/]    <u>Accord</u>, <u>e.g.</u>, <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 521, 123 S. Ct. at 2535; <u>Bell</u> v. <u>Cone</u>, 535 U.S. 685, 695, 122 S. Ct. 1843, 1850 (2002); <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 63.

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction . . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time . . . .  [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Strickland v. Washington, 466 U.S. at 689, 104 S. Ct. at 2065 (citation omitted).[47]

Second, the defendant must show prejudice from counsel's performance.  Strickland v. Washington, 466 U.S. at 687, 104 S. Ct. at 2064.  The "question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt."  Id. at 695, 104 S. Ct. at 2068-69.  Put another way, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694, 104 S. Ct. at 2068.[48]

---

[47]    Accord, e.g., Bell v. Cone, 535 U.S. at 698, 122 S. Ct. at 1852; Bell v. Miller, 2007 WL 2469423 at *6; Henry v. Poole, 409 F.3d at 63; Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001); Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001).

[48]    See also, e.g., Wiggins v. Smith, 539 U.S. at 534, 123 S. Ct. at 2542; Bell v. Cone, 535 U.S. at 695, 122 S. Ct. at 1850; Mosby v. Senkowski, 470 F.3d 515, 519 (2d Cir. 2006), cert. denied, 128 S. Ct. 75 (2007); Henry v. Poole, 409 F.3d at 63-64; Aparicio v. Artuz, 269 F.3d at 95; Sellan v. Kuhlman, 261 F.3d at 315; DeLuca v. Lord, 77 F.3d 578, 584 (2d Cir.), cert. denied, 519 U.S. 824, 117 S. Ct. 83 (1996).

   "[A] reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland v. Washington, 466 U.S. at 694, 104 S. Ct. at 2068; accord, e.g., Wiggins v. Smith, 539 U.S. at 534, 123 S. Ct. at 2542.  The phrase "reasonable probability," despite its language, should not be confused with "probable" or "more likely than not."  Strickler v. Greene, 527 U.S. 263, 289-91, 119 S. Ct. 1936, 1952-53 (1999); Kyles v. Whitley, 514 U.S. 419, 434, 115 S. Ct. 1555, 1565-66 (1995); Nix v. Whiteside, 475 U.S.
(continued...)

The Supreme Court has counseled that these principles "do not establish mechanical rules." <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 696, 104 S. Ct. at 2069. The focus of the inquiry should be on the fundamental fairness of the trial and whether, despite the strong presumption of reliability, the result is unreliable because of a breakdown of the adversarial process. <u>Id</u>.

Any counsel errors must be considered in the "aggregate" rather than in isolation, as the Supreme Court has directed courts "to look at the 'totality of the evidence before the judge or jury.'" <u>Lindstadt</u> v. <u>Keane</u>, 239 F.3d 191, 199 (2d Cir. 2001) (quoting <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 695-96, 104 S. Ct. at 2069); <u>accord</u>, <u>e.g.</u>, <u>Rodriguez</u> v. <u>Hoke</u>, 928 F.2d 534, 538 (2d Cir. 1991).

The Supreme Court also made clear that "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 697, 104 S. Ct. at 2069.[49]

In addition, the Supreme Court has counseled that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable;

---

[48]   (...continued)
157, 175, 106 S. Ct. 988, 998 (1986) ("a defendant need not establish that the attorney's deficient performance more likely than not altered the outcome in order to establish prejudice under <u>Strickland</u>"); <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 694, 104 S. Ct. at 2068 ("The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome."). Rather, the phrase "reasonable probability" seems to describe a fairly low standard of probability, albeit somewhat more likely than a "reasonable possibility." <u>Strickler</u> v. <u>Greene</u>, 527 U.S. at 291, 119 S. Ct. at 1953; <u>cf.</u> <u>id.</u> at 297-301, 119 S. Ct. at 1955-58 (Souter, J., concurring & dissenting) (arguing that any difference between "reasonable probability" and "reasonable possibility" is "slight").

[49]   <u>Accord</u>, <u>e.g.</u>, <u>Smith</u> v. <u>Robbins</u>, 528 U.S. 259, 286 n.14, 120 S. Ct. 746, 764 n.14 (2000).

and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. . . .  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  Strickland v. Washington, 466 U.S. at 690-91, 104 S. Ct. at 2066.[50/]

As the Second Circuit noted:  "The Strickland standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard."  Lindstadt v. Keane, 239 F.3d at 199; accord, e.g., Bell v. Miller, 2007 WL 2469423 at *4.

### 1.     The Strickland Test Also Applies to Appellate Counsel

The Strickland test applies to appellate as well as trial counsel.  See, e.g., Smith v. Robbins, 528 U.S. 259, 285, 120 S. Ct. 746, 764 (2000).[51/]  A petitioner alleging ineffective

---

[50/]     See also, e.g., Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S. Ct. 1, 4 (2003); Engle v. Isaac, 456 U.S. 107, 134, 102 S. Ct. 1558, 1575 (1982) ("We have long recognized . . . that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim."); Jackson v. Leonardo, 162 F.3d 81, 85 (2d Cir. 1998) ("In reviewing Strickland claims, courts are instructed to 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and that counsel's conduct was not the result of error but derived instead from trial strategy. We are also instructed, when reviewing decisions by counsel, not to 'second-guess reasonable professional judgments and impose on . . . counsel a duty to raise every "colorable" claim' on appeal.") (citations omitted); Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir.) (a reviewing court "may not use hindsight to second-guess [counsel's] strategy choices"), cert. denied, 513 U.S. 820, 115 S. Ct. 81 (1994).

[51/]     Accord, e.g., Evitts v. Lucey, 469 U.S. 387, 396-97, 105 S. Ct. 830, 836-37 (1985); Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 197 (2d Cir. 2002), cert. denied, 537 U.S. 1146, 123 S. Ct. 946 (2003); Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001); Sellan v. Kuhlman, 261 F.3d 303, 319 (2d Cir. 2001); McKee v. United States, 167 F.3d 103, 106 (continued...)

assistance of appellate counsel must prove both that (1) appellate counsel acted objectively unreasonably in failing to raise a particular issue on appeal, and (2) absent counsel's deficient performance, there was a reasonable probability that defendant's appeal would have been successful before the state's highest court. E.g., Smith v. Robbins, 528 U.S. at 285, 120 S. Ct. at 764; Aparicio v. Artuz, 269 F.3d at 95; Mayo v. Henderson, 13 F.3d at 533-34; see also, e.g., Larrea v. Bennett, 01 Civ. 5813, 2002 WL 1173564 at *18 n.30 (S.D.N.Y. May 31, 2002) (Peck, M.J.) (discussing the issue of whether a federal or state standard should apply), report & rec. adopted, 2002 WL 1808211 (S.D.N.Y. Aug. 6, 2002), aff'd, 368 F.3d 179 (2d Cir. 2004).

Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. at 288, 120 S. Ct. at 765 (citing Jones v. Barnes, 463 U.S. 745, 750-54, 103 S. Ct. 3308, 3312-14 (1983)).[52] Reviewing courts should not second guess the reasonable professional judgments of appellate counsel as to the most promising appeal issues. Lugo v. Kuhlmann, 68 F. Supp. 2d 347, 371-72 (S.D.N.Y. 1999) (Patterson, D.J. & Peck, M.J.).[53] Thus, a

---

[51]    (...continued)
(2d Cir. 1999); Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir.), cert. denied, 513 U.S. 820, 115 S. Ct. 81 (1994); Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992), cert. denied, 508 U.S. 912, 113 S. Ct. 2347 (1993); Abdurrahman v. Henderson, 897 F.2d 71, 74 (2d Cir. 1990).

[52]    Accord, e.g., Sellan v. Kuhlman, 261 F.3d at 317 ("This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."); Jackson v. Leonardo, 162 F.3d 81, 85 (2d Cir. 1998); Mayo v. Henderson, 13 F.3d at 533.

[53]    Accord, e.g., Jones v. Barnes, 463 U.S. at 754, 103 S. Ct. at 3314; Tsirizotakis v. LeFevre, 736 F.2d 57, 65 (2d Cir.), cert. denied, 469 U.S. 869, 105 S. Ct. 216 (1984).

petitioner may establish constitutionally inadequate performance only by showing that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo v. Henderson, 13 F.3d at 533; see also, e.g., Jackson v. Leonardo, 162 F.3d at 85.

### 2.    Strickland and the AEDPA Review Standard

For purposes of this Court's AEDPA analysis, "the Strickland standard . . . is the relevant 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Aparicio v. Artuz, 269 F.3d 78, 95 & n.8 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(d)(1)).[54/] "For AEDPA purposes, a petitioner is not required to further demonstrate that his particular theory of ineffective assistance of counsel is also 'clearly established.'" Aparicio v. Artuz, 269 F.3d at 95 n.8. "For [petitioner] to succeed, however, he must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. . . . Rather, he must show that the [First Department] applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 698-99, 122 S. Ct. 1843, 1852 (2002); see also, e.g., Yarborough v. Gentry, 540 U.S. 1, 5, 124 S. Ct. 1, 4 (2003); Mosby v. Senkowski, 470 F.3d at 519.

---

[54/]    See also, e.g., Wiggins v. Smith, 539 U.S. 510, 521-22, 123 S. Ct. 2527, 2535 (2003); Bell v. Cone, 535 U.S. 685, 698, 122 S. Ct. 1843, 1852 (2002); Mosby v. Senkowski, 470 F.3d 515, 518-19 (2d Cir. 2006), cert. denied, 128 S. Ct. 75 (2007); Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001).

**_____B.    Brown's Ineffective Assistance of Trial Counsel Claim Is Procedurally Barred from Habeas Review**

          In his habeas petition, Brown claims that his trial counsel was ineffective for failing to object to errors set forth in Brown's coram nobis petition.  (Dkt. No. 1: Pet. ¶ 13, incorporating Dkt. No. 8: Danzig Aff. Ex. G: Brown Pro Se Coram Nobis Br. at 4-31.)   Raising ineffective assistance of trial counsel claims in a coram nobis petition does not properly raise or exhaust those claims.[55/]  Brown never raised his ineffective assistance of trial counsel claim on direct appeal[56/] (see

---

[55/]     Coram nobis addresses appellate errors, not trial errors, and thus ineffective assistance of trial counsel claims are not properly raised there and are not exhausted by a coram nobis petition. See, e.g., Smith v. Artus, 03 Civ. 9819, 2005 WL 1661104 at *13 (S.D.N.Y. July 14, 2005) (Ineffective assistance of trial counsel claim unexhausted where petitioner filed coram nobis petition alleging ineffective appellate counsel for failing to raise ineffective trial counsel claims; "coram nobis is not the appropriate vehicle for" ineffective trial counsel claims.); Acosta v. Couture, 99 Civ. 9727, 2003 WL 272052 at *6 (S.D.N.Y. Jan. 23, 2003) (same); Otero v. Stinson, 51 F. Supp. 2d 415, 419 (S.D.N.Y. 1999) (Baer, D.J. & Peck, M.J) ("While [petitioner] claimed ineffective assistance of trial counsel in his coram nobis motion to the First Department, 'a coram nobis motion to the Appellate Division addresses errors at the appellate level . . . not trial errors.'") (citing cases).

[56/]     See, e.g., Louis v. Fischer, 04 Civ. 2887, 2007 WL 4198255 at *21 (S.D.N.Y. June 25, 2007) ("In New York, 'it is well-settled . . . that where the record is sufficient to allow appellate review of a claim, the failure to raise that claim on appeal precludes subsequent collateral review of that claim.' This rule 'applies to bar collateral review where the facts underlying an ineffective assistance of counsel claim appear on the record.'") (citations omitted); Alston v. Donnelly, 461 F. Supp. 2d 112, 123 (W.D.N.Y. 2006); Pearson v. Greiner, 02 Civ. 10244, 2004 WL 2453929 at *9 (S.D.N.Y. Nov. 3, 2004); Serrano v. Senkowski, 02 Civ. 8708, 2004 U.S. Dist. LEXIS 18936 at *35-36 (S.D.N.Y. Sept. 23, 2004); Estwick v. Walker, 01 Civ. 2174, 2004 WL 1151581 at *6 (S.D.N.Y. May 24, 2004); Larrea v. Bennett, 01 Civ. 5813, 2002 WL 1173564 at *14 (S.D.N.Y. May 31, 2002) (Peck, M.J.); People v. Cooks, 67 N.Y.2d 100, 103-04, 500 N.Y.S.2d 503, 505 (1986); People v. Byrdsong, 234 A.D.2d 468, 469, 651 N.Y.S.2d 903, 903 (2d Dep't 1996), appeal denied, 89 N.Y.2d 1033, 659 N.Y.S.2d 863 (1997); People v. Skinner, 154 A.D.2d 216, 221, 552 N.Y.S.2d 932, 935 (1st Dep't), appeal denied, 76 N.Y.2d 796, 559 N.Y.S.2d 1001 (1990).

pages 19-20 above), or in a C.P.L. § 440.10 motion,[57/] and thus his ineffective trial counsel claim is

unexhausted in the state courts, but deemed exhausted and procedurally barred.

          "'For exhaustion purposes, "a federal habeas court need not require that a federal

claim be presented to a state court if it is clear that the state court would hold the claim procedurally

barred."'" <u>Reyes</u> v. <u>Keane</u>, 118 F.3d 136, 139 (2d Cir. 1997) (quoting <u>Grey</u> v. <u>Hoke</u>, 933 F.2d 117,

120 (2d Cir. 1991) (quoting <u>Harris</u> v. <u>Reed</u>, 489 U.S. 255, 263 n.9, 109 S. Ct. 1038, 1043 n.9

---

[57/]    Even if Brown's claim did not stem from the record, Brown is still procedurally barred because he did not file a C.P.L. § 440.10 motion. <u>See</u>, <u>e.g.</u>, <u>Quinones</u> v. <u>Miller</u>, 01 Civ. 10752, 2003 WL 21276429 at *21 & n.34 (S.D.N.Y. June 3, 2003) (Peck, M.J.) ("[U]nder New York law, ineffective [trial] counsel claims involving matters outside the record . . . 'must be pursued by way of a C.P.L. 440.10 motion.'") (citing cases), <u>report & rec. adopted</u>, 2005 WL 730171 (S.D.N.Y. Mar. 31, 2005); <u>People</u> v. <u>Nason</u>, 31 A.D.3d 818, 820 (3d Dep't 2006) ("[M]ost of defendant's complaints concerning counsel involved matter dehors the record, which should be addressed by way of a CPL article 440 motion."); <u>People</u> v. <u>Santer</u>, 816 N.Y.S.2d 444, 444 (1st Dep't 2006) ("Since defendant's ineffective assistance of counsel claim turns on matters outside the record, . . . it is not reviewable on direct appeal and would require further record to be developed by way of a CPL 440.10 motion.").

    To the extent that Brown's ineffective assistance of trial counsel claims were based on facts outside the record, this Court ordered Brown "to bring a C.P.L. § 440 motion [in state court] to exhaust his ineffective assistance of trial counsel claims" and to advise the Court that he was doing so. (Dkt. No. 9: 3/6/08 Order.) Brown did not respond to that Order and his time to bring a C.P.L. § 440 motion, for AEDPA habeas review purposes, has long passed. Accordingly, since Brown did not bring a C.P.L. § 440 motion to exhaust his ineffective assistance of trial counsel claims, those claims are deemed exhausted and procedurally barred. <u>See</u> <u>Rhines</u> v. <u>Weber</u>, 544 U.S. 269, 277, 125 S. Ct. 1528, 1535 (2005) (district court should not excuse "a petitioner's failure to present his claims first to the state courts" when there was no "good cause"); <u>Zarvela</u> v. <u>Artuz</u>, 254 F.3d 374, 380-82 (2d Cir.) (holding that the district court has discretion under the AEDPA to dismiss unexhausted claims, conditioned on prompt filing of state collateral proceedings), <u>cert. denied</u>, 234 U.S. 1015, 122 S. Ct. 506 (2001).

(1989))).[58] "In such a case, a petitioner no longer has 'remedies available in the courts of the State'

within the meaning of 28 U.S.C. § 2254(b)."  Grey v. Hoke, 933 F.2d at 120. Consequently, such

procedurally barred claims are "deemed exhausted" by the federal courts.  E.g., St. Helen v.

Senkowski, 374 F.3d at 183; DiGuglielmo v. Smith, 366 F.3d at 135; McKethan v. Mantello, 292

F.3d at 122-23; Ramirez v. Attorney Gen., 280 F.3d at 94; Reyes v. Keane, 118 F.3d at 139; Bossett

v. Walker, 41 F.3d at 828; Washington v. James, 996 F.2d 1442, 1446-47 (2d Cir. 1993), cert.

denied, 510 U.S. 1078, 114 S. Ct. 895 (1994); Grey v. Hoke, 933 F.2d at 120-21.

It is clear that Brown is now barred from raising his ineffective assistance of trial

counsel claim in state court because such a claim could have been raised on direct appeal, but was

not[59] (or possibly in a C.P.L. § 440 motion that is now time barred for federal habeas purposes, see

---

[58]    Accord, e.g., Castille v. Peoples, 489 U.S. 346, 350, 109 S. Ct. 1056, 1059 (1989) ("It would
be inconsistent with [§ 2254(b)], as well as with underlying principles of comity, to mandate
recourse to state collateral review whose results have effectively been predetermined"); St.
Helen v. Senkowski, 374 F.3d 181, 183 (2d Cir. 2004) ("even if a federal claim has not been
presented to the highest state court or preserved in lower state courts under state law, it will
be deemed exhausted if it has become procedurally barred under state law."); DiGuglielmo
v. Smith, 366 F.3d 130, 135 (2d Cir. 2004) (petitioner's procedurally defaulted claims
deemed exhausted where he could no longer obtain state-court review because of his
procedural default); McKethan v. Mantello, 292 F.3d 119, 122-23 (2d Cir. 2002) (claims
deemed exhausted where they were "procedurally barred for not having been raised in a
timely fashion"); Ramirez v. Attorney Gen., 280 F.3d 87, 94 (2d Cir. 2001); Bossett v.
Walker, 41 F.3d 825, 828 (2d Cir. 1994) ("[I]f the petitioner no longer has 'remedies
available' in the state courts under 28 U.S.C. § 2254(b), we deem the claims exhausted."),
cert. denied, 514 U.S. 1054, 115 S. Ct. 1436 (1995).

[59]    C.P.L. § 440.10(2)(c) states, in pertinent part:

2.  Notwithstanding the provisions of subdivision one, the court must deny a motion
to vacate a judgment when:

(continued...)

page 67 n.57 above).  As the Second Circuit explained in <u>Washington</u> v. <u>James</u>:

> Consequently, we do not believe [petitioner] has fairly presented to the state courts his constitutional objection. . . . [T]he state courts have not had an opportunity to address the federal claim raised on habeas review and this normally would preclude our review of that claim.
>
>                      . . . .
>
> As we have already noted, this preclusion is not technically the result of a failure to exhaust state remedies, but is due to a procedural default.  [Petitioner] no longer has the right to raise his claim under New York law either on direct appeal, <u>see</u> McKinney's 1993 Revised N.Y. Court Rules § 500.10(a), or on collateral review.  New York's collateral procedures are unavailable because [petitioner] could have raised the claim on direct review but did not.  <u>See</u> N.Y. Crim. Proc. Law § 440.10(2)(c).  Therefore [petitioner] has no further recourse in state court.  <u>See</u> 28 U.S.C. § 2254(c); <u>Grey</u> v. <u>Hoke</u>, 933 F.2d [at] 120. . . . Because he failed to raise his claim in state court and no longer may do so, his claim is procedurally defaulted.

996 F.2d at 1446-47.[60/]

_____

[59/]        (...continued)
                      . . . .

            (c)  Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to . . .  raise such ground or issue upon an appeal actually perfected by him . . . .

[60/]        See also, e.g., <u>Galdamez</u> v. <u>Keane</u>, 394 F.3d 68, 73-74 (2d Cir.) ("a petitioner cannot claim to have exhausted his or her remedies by dint of no longer possessing 'the right under the law of the State to raise, by any available procedure, the question presented,' if at some point the petitioner had that right but failed to exercise it.") (citation omitted), <u>cert. denied</u>, 544 U.S. 1025, 125 S. Ct. 1996 (2005); <u>DiGuglielmo</u> v. <u>Smith</u>, 366 F.3d at 135 (Second Circuit affirmed denial of petitioner's habeas claim because "his claims were not properly exhausted and . . . his procedural default is not excusable."); <u>Jones</u> v. <u>Keane</u>, 329 F.3d 290, 296 (2d Cir.) ("[Petitioner] has procedurally defaulted his vagueness claim since New York's procedural rules now bar [petitioner] from raising it in New York courts.  Further direct review by the Court of Appeals is no longer available. . . ."), <u>cert. denied</u>, 540 U.S. 1046, 124
                                                                                (continued...)

To avoid a procedural default on his unexhausted ineffective assistance of trial counsel claim, Brown would have to "show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claims will result in a 'fundamental miscarriage of justice,'" i.e., a showing of "actual innocence." Harris v. Reed, 489 U.S. at 262, 109 S. Ct. at 1043 (citations omitted); accord, e.g., Schlup v. Delo, 513 U.S. 298, 324-27, 115 S. Ct. 851, 865-67 (1995); Coleman v. Thompson, 501 U.S. 722, 735, 111 S. Ct. 2546, 2557 (1991).[61/]

Brown has not alleged cause and prejudice nor has he made a showing of actual innocence.  Thus, Brown's unexhausted ineffective assistance of trial counsel claim should be DENIED as barred from habeas review.

### C.    Appellate Counsel Was Not Ineffective for Failing to Argue That Trial Counsel Was Ineffective

Brown alleges that his appellate counsel was ineffective for failing to argue on appeal that trial counsel was ineffective based on trial counsel's failure to:  (1) object to the trial court's instructions (Dkt. No. 1: Pet. ¶ 13, incorporating Dkt. No. 8: Danzig Aff. Ex. G: Brown Pro Se

---

[60/]    (...continued)
S. Ct. 804 (2003); Reyes v. Keane, 118 F.3d at 139 ("Section 440.10(2)(c) of New York's Criminal Procedure Law mandates that the state court deny any 440.10 motion where the defendant unjustifiably failed to argue such constitutional violation on direct appeal despite a sufficient record.") (emphasis added).

[61/]    See also, e.g., Messiah v. Duncan, 435 F.3d 186, 195 (2d Cir. 2006); Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005); Smith v. Duncan, 411 F.3d 340, 347 (2d Cir. 2005); DeBerry v. Portuondo, 403 F.3d 57, 64 (2d Cir.), cert. denied, 126 S. Ct. 225 (2005); St. Helen v. Senkowski, 374 F.3d at 183-84; DiGuglielmo v. Smith, 366 F.3d at 135;  Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997); Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996), cert. denied, 520 U.S. 1108, 117 S. Ct. 1116 (1997); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).

Coram Nobis Br. at 4-18, 24-31); (2) object to the "compromise verdict" (id. at 9-11); (3) object to the admission of medical records (id. at 18-23); and (4) object to the joinder of the robbery and assault counts (id. at 9-11).

Brown's ineffective appellate counsel claim thus depends on the merits of his ineffective trial counsel claim.[62] As detailed below, the failure of Brown's trial counsel to make the claimed objections did not constitute ineffective assistance. Because, therefore, Brown's predicate claim for ineffective trial counsel is meritless, his claim for ineffective appellate counsel must be dismissed. See, e.g., Aparicio v. Artuz, 269 F.3d 78, 99-100 (2d Cir. 2001); James v. Artus, 03 Civ. 7612, 2005 WL 859245 at *16 (S.D.N.Y. Apr. 15, 2005) (Peck, M.J.) ("Appellate counsel cannot be ineffective for failing to raise a meritless claim on appeal.") (citing cases).

### 1. Trial Counsel Was Not Ineffective for Failing to Object to the Jury Instructions

Brown claims that counsel should have objected to the trial court's instructions on reasonable doubt, intent, burden of proof and the use of hypothetical examples. (Dkt. No. 8: Danzig Aff. Ex. G: Brown Pro Se Coram Nobis Br. at 4-31.)

---

[62] To the extent that Brown may be claiming that appellate counsel should have raised the issues (e.g., jury instructions) as direct claims as opposed to ineffective trial counsel claims, such a habeas claim would be frivolous. Because trial counsel had not objected to any of these alleged errors, they were not preserved for state appellate review, and had appellate counsel raised such unpreserved claims, the First Department could have denied review based on the contemporaneous objection rule. See, e.g., C.P.L. § 470.05(2); Gomez v. Duncan, 02 Civ. 0846, 2004 WL 119360 at *35 (S.D.N.Y. Jan. 27, 2004) (Peck, M.J.) (& cases cited therein).

72

### a.    Standard of Review of a State Court's Jury Instructions

It is well-established that a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (quoting Lewis v. Jeffers, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102 (1990)).

As the Second Circuit has stated:  "'In order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law.'" Blazic v. Henderson, 900 F.2d 534, 540 (2d Cir. 1990) (quoting Casillas v. Scully, 769 F.2d 60, 63 (2d Cir. 1985)).[63/]  Failure to give a properly requested jury charge does not by itself violate a petitioner's right to due process.  E.g., Blazic v. Henderson, 900 F.2d at 541 ("A mere error of state law does not deny a defendant his right to due process.").[64/]  Moreover, "[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." Henderson v. Kibbe, 431 U.S. 145, 154, 97 S. Ct. 1730, 1736 (1977).

---

[63/]    Accord, e.g., Davis v. Strack, 270 F.3d 111, 123 (2d Cir. 2001); Sams v. Walker, 18 F.3d 167, 171 (2d Cir. 1994); see, e.g., Cupp v. Naughten, 414 U.S. 141, 146, 94 S. Ct. 396, 400 (1973).

[64/]    See also, e.g., Schaefer v. Leone, 443 F.2d 182, 185 (2d Cir.), cert. denied, 404 U.S. 939, 92 S. Ct. 277 (1971).

"For an erroneous state jury charge to result in a federal constitutional deprivation, 'the ailing instruction by itself [must have] so infected the entire trial that the resulting conviction violates due process.'" <u>Blazic</u> v. <u>Henderson</u>, 900 F.2d at 541 (quoting <u>Cupp</u> v. <u>Naughten</u>, 414 U.S. at 147, 94 S. Ct. at 400); <u>see also</u>, <u>e.g.</u>, <u>Casillas</u> v. <u>Scully</u>, 769 F.2d at 63; <u>Carmona</u> v. <u>Attorney Gen.</u>, 96 Civ. 8045, 1997 WL 876737 at *11 (S.D.N.Y. Oct. 7, 1997) ("Jury charges that contain errors, even if they lead to the jury misapplying state law, do not ordinarily give rise to federal habeas corpus relief in non-capital cases. . . . Rather, an erroneous jury charge must have 'infected the entire trial' to be a cognizable claim in a habeas corpus proceeding."), <u>report & rec. adopted</u>, 1998 WL 213781 (S.D.N.Y. Apr. 29, 1998).

### b.    <u>Application of Standard to Brown's Claim</u>

In determining whether trial counsel was ineffective for failing to argue that the jury instructions were prejudicial, this Court must review Justice McLaughlin's instructions and consider whether the instructions themselves contained "clear and previously identified errors." <u>Aparicio</u> v. <u>Artuz</u>, 269 F.3d 78, 99 (2d Cir. 2001) ("Counsel's failure to object to a jury instruction (or to request an additional instruction) constitutes unreasonably deficient performance only when the trial court's instruction contained 'clear and previously identified errors.'").

Regarding intent, Justice McLaughlin's final jury instructions explained that the jury may use or reject the following mechanisms to find intent:  (1) a person intends the natural and logical consequences of his or her actions; or (2) one "can detect and discern and know what a person intends by what they both do and say before, during and after an event."  (<u>See</u> page 10 above.) Brown claims that this instruction was prejudicial and misleading because it was "tantamount to the

telling of the jury that <u>intent</u> (to commit second degree assault), is the 'act' (of punching complainant)." (Dkt. No. 8: Danzig Aff. Ex. G: Brown Pro Se Coram Nobis Br. at 8-9.) Brown contends that <u>Sandstrom</u> v. <u>Montana</u>, 442 U.S. 510, 524, 99 S. Ct. 2450, 2459 (1979), forbids a court from instructing a jury that a person intends the natural consequences of his or her actions. In <u>Francis</u> v. <u>Franklin</u>, 471 U.S. 307, 315-16, 105 S. Ct. 1965, 1972 (1985), the Supreme Court made clear that <u>Sandstrom</u> only applies where the instruction creates a "mandatory rebuttable presumption," because that puts the burden of proof on the defendant. In contrast, Justice McLaughlin <u>permitted</u> the jury to interpret intent through the natural consequences of Brown's actions, but explicitly instructed the jurors to "reject these [tools] if you don't think they make any sense." (<u>See</u> page 10 above.) Such permissive instruction has been upheld by the courts. <u>See</u> <u>United States</u> v. <u>Russo</u>, 302 F.3d 37, 47-48 (2d Cir. 2002) (finding "no error" with the trial court's instruction that the jury "'may infer that a person ordinarily intends all the natural and probable consequences of an act knowingly done,'" and stating that "'you may infer' language is significantly different from the 'law presumes' language in <u>Sandstrom</u>. 'You may infer' language may pose no constitutional problem where in context it suggests to the jury only a permissible inference.") (citing <u>Francis</u> v. <u>Franklin</u>, 471 U.S. at 314-15, 105 S. Ct. at 1971), <u>cert. denied</u>, 537 U.S. 1112, 123 S. Ct. 902 (2003); <u>United States</u> v. <u>Nelson</u>, 277 F.3d 164, 197 (2d Cir.) ("[I]t is . . . well established that, while a jury instruction in a criminal case that the law presumes that a person intends the ordinary consequences of his voluntary acts violates due process, <u>see</u> <u>Sandstrom</u> v. <u>Montana</u>, . . . , an instruction that merely <u>permits</u> a jury to infer that an accused intends such consequences of such acts

is acceptable, see Francis v. Franklin, . . . . The instruction in the case at bar, which contained the language 'you may infer,' is unambiguously of the latter, and generally permissible, variety."), cert. denied, 537 U.S. 385, 123 S. Ct. 145 (2002).

        In addition, Brown argues that Justice McLaughlin committed reversible error by failing to instruct the jury that it must find Brown guilty of every element of the crimes charged beyond a reasonable doubt, and by failing to instruct the jury to consider the absence of evidence in determining reasonable doubt.  (Brown Pro Se Coram Nobis Br. at 24-28.)  The trial record clearly establishes that Justice McLaughlin properly instructed the jury as to these matters during voir dire (see page 4 above), in his instructions at the end of trial (see pages 8-11 above), and in response to a jury question during deliberations (see pages 12-13 above).  Brown specifically alleges Justice McLaughlin prejudicially misled the jury with his statement:

> Further, there is no obligation on the part of the People to establish the elements of a crime, which is the focus of the standard beyond a reasonable doubt, there is no obligation on the part of the People to establish the elements of the crime beyond all doubt, for that would be virtually impossible, given all the factors that relate to the testimony of human beings.  However, the People's obligation is to prove an accused guilty beyond a reasonable doubt.

(See page 11 above; see also Brown Pro Se Coram Nobis Br. at 25.)  This part of the instruction merely distinguished "beyond all doubt" from "beyond reasonable doubt," and in the context of the entire charge, was not misleading.  See Styles v. Van Zandt, No. 95-2410, 101 F.3d 684 (table), 1996 WL 281354 at *1 (2d Cir. May 15, 1996) ("To the extent that the challenged language makes clear that 'absolute' certainty is not required for conviction, it reasonably parallels the language of approved federal and state pattern jury instructions to the effect that the prosecution need not prove

the defendant's guilt beyond all possible doubt."), cert. denied, 519 U.S. 936, 117 S. Ct. 313 (1996);

Patterson v. Pool, 02 Civ. 5389, 2004 WL 1874967 at *7 (S.D.N.Y. Aug. 18, 2004) (habeas

challenge denied to trial court's instruction that included in longer charge that "'there is no obligation

on the part of the People to establish the elements . . . beyond all doubt, to a mathematical certainty,

for that is impossible, but the People must prove defendant's guilt beyond a reasonable doubt. . . .'").

Moreover, any confusion this statement may have caused certainly was dispelled by Justice

McLaughlin's additional explanation in response to a jury note, that "[p]roof of guilt beyond a

reasonable doubt is proof that leaves you so firmly convinced of the defendant's guilt that you have

no reasonable doubt of the existence of any element of the crime or of the defendant's identity as the

person who committed the crime."[65]   (See pages 12-13 above.)   Considered as a whole and in

context, Justice McLaughlin's reasonable doubt instructions did not contain any "clear and previously

identified errors."  Aparicio v. Artuz, 269 F.3d at 99.

        The Court will not further discuss Brown's other claims of erroneous jury instructions.

The Court has reviewed Justice McLaughlin's jury instructions (and supplemental instructions) and

finds them, in context, to be correct.

        With respect to Brown's claim that counsel should have requested additions to Justice

McLaughlin's charge (e.g., Brown Pro Se Coram Nobis Br. at 25-28), the Second Circuit has held

that "when a trial court's instruction is legally correct as given, the failure to [object or to] request

---

[65]    This instruction is taken from the N.Y. Model Criminal Jury Instructions 2d on Reasonable
Doubt.  CJI 2d (NY) Reasonable Doubt.

an additional instruction does not constitute deficient performance."  <u>Aparicio</u> v. <u>Artuz</u>, 269 F.3d at

99; <u>accord</u>, <u>e.g.</u>, <u>Rivera</u> v. <u>Duncan</u>, 00 Civ. 4923, 2001 WL 1580240 at *15 & n.27 (S.D.N.Y.

Dec. 11, 2001) (Peck, M.J.) (citing cases).<u>66/</u>

_____

<u>66/</u>      <u>See also</u>, <u>e.g.</u>, <u>United States</u> v. <u>Javino</u>, 960 F.2d 1137, 1145 (2d Cir. 1992) (failure to request
instructions did not constitute ineffective counsel, because the court's instructions on those
topics "were correct as given"), <u>cert. denied</u>, 506 U.S. 979, 113 S. Ct. 477 (1992); <u>United
States</u> v. <u>Arena</u>, 180 F.3d 380, 396 (2d Cir. 1999) ("Failure to make a meritless argument
does not amount to ineffective assistance."), <u>cert. denied</u>, 531 U.S. 811,121 S. Ct. 33 (2000);
<u>United States</u> v. <u>Kirsh</u>, 54 F.3d 1062, 1071 (2d Cir.) ("the failure to make a meritless
argument does not rise to the level of ineffective assistance"), <u>cert. denied</u>, 516 U.S. 927, 116
S. Ct. 330 (1995); <u>United States</u> v. <u>Moland</u>, No. 94-1032, 39 F.3d 1193 (table), 1994 WL
600985 at *2 (10th Cir. Nov. 3, 1994) ("counsel cannot be ineffective for not pursuing a
strategy doomed to failure"); <u>Cuevas</u> v. <u>Henderson</u>, 801 F.2d 586, 592 (2d Cir.1986), <u>cert.
denied</u>, 480 U.S. 908, 107 S. Ct. 1354 (1987); <u>Ennis</u> v. <u>Walker</u>, 00 Civ. 2875, 2001 WL
409530 at *22 (S.D.N.Y. Apr. 6, 2001) (Peck, M.J.) ("Because there would have been no
merit to any of the objections [petitioner] contends defense counsel should have made,
counsel's failure to object does not constitute ineffective assistance."); <u>Manning</u> v. <u>Walker</u>,
No. 99-CV-5747, 2001 WL 25637 at *19 (E.D.N.Y. Jan. 3, 2001) (because "court committed
no error in its jury charges, it follows that [petitioner's] defense counsel was not
constitutionally ineffective by failing to object"); <u>Franza</u> v. <u>Stinson</u>, 58 F. Supp. 2d 124, 148
(S.D.N.Y.1999) (Kaplan, D.J. & Peck, M.J.); <u>Duncan</u> v. <u>Greiner</u>, 97 Civ. 8754, 1999 WL
20890 at *10 (S.D.N.Y. Jan. 19, 1999) (since trial counsel's objection would have been
fruitless, "the failure to so object is not evidence of ineffective assistance of counsel"); <u>Perez</u>
v. <u>United States</u>, 89 CR 800, 96 Civ. 7702, 1997 WL 661426 at *4 (S.D.N.Y. Oct. 23, 1997)
("Defense counsel's failure to object, then, cannot have resulted in actual prejudice to
petitioner, as the objection would have been meritless."); <u>United States</u> v. <u>Corcoran</u>, 855 F.
Supp. 1359, 1367-68 (E.D.N.Y. 1994) (where identification found not improper, "counsel's
failure to pursue the motion to suppress the in-court identification clearly did not deny
defendant the effective assistance of counsel."), <u>aff'd</u>, 100 F.3d 944 (2d Cir.), <u>cert denied</u>, 517
U.S. 1228, 116 S. Ct. 1864 (1996); <u>Arce</u> v. <u>Smith</u>, 710 F. Supp. 920, 926-27 (S.D.N.Y.)
(inasmuch as there was no constitutional error or reversible error under state law, petitioner
was not prejudiced by counsel's failure to object and counsel was not ineffective), <u>aff'd</u>, 889
F.2d 1271 (2d Cir. 1989), <u>cert. denied</u>, 495 U.S. 937, 110 S. Ct. 2185 (1990); <u>People</u> v.
<u>Brickle</u>, 244 A.D.2d 700, 702, 664 N.Y.S.2d 652, 654 (3d Dep't 1997) (because "general,
rather than expanded, charge given on identification" was not legal error, the failure to object
(continued...)

This Court cannot say that Justice McLaughlin's jury instructions were erroneous or that they so infected the trial that Brown's assault conviction would violate due process. Brown has not shown that his trial counsel was ineffective in not objecting to the instructions, and therefore Brown's appellate counsel was not ineffective in not bringing such claims on appeal. Moreover, the First Department's rejection of Brown's ineffective appellate counsel claim is entitled to AEDPA deference and certainly is not contrary to or an unreasonable application of <u>Strickland</u>. Brown's claim that appellate counsel was ineffective for failing to argue that trial counsel was ineffective for failing to object to the jury instructions should be <u>DENIED</u>.

### 2. Trial Counsel Was Not Ineffective for Failing to Object that the Jury (Allegedly) Reached a Compromise or Repugnant Verdict

Brown claims that the jury reached a "compromise[d]" verdict and that the jury's acquittal on the robbery charge rendered his conviction on the assault charge "repugnant" or contradictory. (Dkt. No. 8: Danzig Aff. Ex. G: Brown Pro Se Coram Nobis Br. at 9-11, 16-17.) Brown argues that assault is a lesser included offense to robbery, such that Brown's acquittal on the robbery charges should amount to an acquittal on the assault charge. (Brown Pro Se Coram Nobis Br. at 16.)

The elements of second degree assault are: (1) with intent to cause physical injury to another person; (2) the defendant causes such injury to that person "by means of a deadly weapon or a dangerous instrument." Penal Law § 120.05(2). The elements of robbery are: (1) the stealing

---

<u>66/</u>    (...continued)
to it was not ineffective counsel), <u>appeal denied</u>, 91 N.Y.2d 889, 669 N.Y.S.2d 3 (1998).

of property; and (2) the use or threat of use of physical force to prevent the owner from resisting the taking of his property, or compelling the owner to deliver his property.  Penal Law § 160.00.

Brown's mistake is that he focuses only on the common "force" element in both assault and robbery.  But robbery also requires stealing.  A rational trier of fact here could have acquitted Brown of robbery without negating the essential elements of second degree assault.  The jury could have found that, because the police did not recover any money that was stolen from Daniels, the prosecution did not prove beyond a reasonable doubt the first element of robbery, stealing.  (See page 6 above.)  The jury, however, could have found that the prosecution proved both elements of second degree assault beyond a reasonable doubt, based on evidence that:  (1) Daniels sustained a puncture wound; (2) Brown admitted to punching Daniels; and (3) the police recovered a corkscrew from Brown upon his arrest.  (See pages 6-7 above.)  This evidence could allow the jury to find that Brown assaulted Daniels with a corkscrew, causing injury.  Thus, Brown's acquittal of robbery but conviction for assault are not contradictory or repugnant.  See, e.g., People v. Butler, 187 A.D.2d 439, 439, 589 N.Y.S.2d 542, 543 (2d Dep't 1992) ("an acquittal of robbery in the second degree does not negate an essential element of assault in the second degree"), appeal denied, 81 N.Y.2d 786, 594 N.Y.S.2d 732 (1993); People v. Fields, 177 A.D.2d 443, 444, 576 N.Y.S.2d 539, 540 (1st Dep't 1991) ("[W]e do not find the jury's acquittal of the defendants on charges of attempted robbery in the first degree, but conviction on charges of assault in the second degree improper, as the elements of the respective crimes are not mutually inconsistent."), appeal denied, 79 N.Y.2d 856, 580 N.Y.S.2d 728 (1992); People v. Gary, 162 A.D.2d 277, 277, 556 N.Y.S.2d 872, 873 (1st Dep't)

("Acquittal of defendant on the robbery charge, which was the underlying felony upon which the

second degree assault count was based, did not result in a repugnant verdict."), appeal denied, 76

N.Y.2d 893, 561 N.Y.S.2d 555 (1990); People v. Wilson, 156 A.D.2d 743, 743, 549 N.Y.S.2d 494,

495 (2d Dep't 1989) ("The jury's acquittal of the defendant on the charge of robbery in the second

degree (Penal Law § 160.10[2][a]) . . . was not inconsistent with or repugnant to the defendant's

conviction of assault in the second degree (Penal Law § 120.05[6]; . . . .").

       In any event, the claim that a verdict is a "compromise" or inconsistent is neither a

ground for reversal under New York law,[67] nor cognizable on habeas review.[68]

---

[67]    See, e.g., People v. Vitta, 220 A.D.2d 468, 469, 631 N.Y.S.2d 917, 918 (2d Dep't) (A "'compromise' verdict is not a ground for reversal provided the verdict is not reputnant as a matter of law."), appeal denied, 87 N.Y.2d 852, 638 N.Y.S.2d 610 (1995).

[68]    It is well settled that "inconsistent jury verdicts are not a ground for habeas relief." Estrada v. Senkowski, 98 Civ. 7796, 1999 WL 1051107 at *13-14 (S.D.N.Y. Nov. 19, 1999) (citing cases); accord, e.g., Hediam v. Miller, 02 Civ. 1419, 2002 WL 31867722 at *10 (S.D.N.Y. Dec. 23, 2002); see, e.g., United States v. Powell, 469 U.S. 57, 58, 64-65, 105 S. Ct. 471, 473, 476 (1984) ("where truly inconsistent verdicts have been reached, '[t]he most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.' . . . It is equally possible that the jury, convinced of guilt, properly reached its conclusion . . . then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the [other] offense."); Harris v. Rivera, 454 U.S. 339, 345, 102 S. Ct. 460, 464 (1981) ("[i]nconsistency in a verdict is not a sufficient reason for setting it aside"); Dunn v. United States, 284 U.S. 390, 393-94, 52 S. Ct. 189, 190-91 (1932); United States v. Acosta, 17 F.3d 538, 545 (2d Cir. 1994) ("it has long been established that inconsistency in jury verdicts of guilty on some counts and not guilty on others is not a ground for reversal of the verdicts of guilty"); United States v. Alvarado, 882 F.2d 645, 653 (2d Cir. 1989), cert. denied, 493 U.S. 1071, 110 S. Ct. 1114 (1990); United States v. Romano, 879 F.2d 1056, 1060 (2d Cir. 1989); United States v. Chang An-Lo, 851 F.2d 547, 559-60 (2d Cir.), cert. denied, 488 U.S. 966, 109 S. Ct. 493 (1988); Williams v. Artuz, 98 Civ. 7964, 2002 WL
                (continued...)

Brown has not shown that appellate counsel was ineffective for not arguing on appeal that trial counsel was ineffective for not having objected that the verdict was a "compromise" or "repugnant."  Brown certainly has not shown that the First Department's decision was an unreasonable application of federal law.  This habeas claim should be <u>DENIED</u>.

### 3.    Trial Counsel Was Not Ineffective for Failing to Object to the Trial Court's Admission of the Victim's Medical Records

Brown claims that Justice McLaughlin erred in admitting the victim's hospital records without a sponsoring witness, and that trial counsel was ineffective for not objecting to this error. (Dkt. No. 8: Danzig Aff. Ex. G: Brown Pro Se Coram Nobis Br. at 18-23.)  Because <u>defense counsel</u>

---

<u>68/</u>    (...continued)
989529 at *8 (S.D.N.Y. May 15, 2002) ("A claim of inconsistent or repugnant verdicts presents no issue upon which federal habeas corpus relief could be granted."); <u>Torres</u> v. <u>Costello</u>, No. 97-CV-5480, 2001 WL 811924 at *11 (E.D.N.Y. June 1, 2001) (Raggi, D.J.) ("The Supreme Court . . . has long held that a prisoner found guilty on one count of an indictment cannot attack his conviction simply because it appears inconsistent with a finding of not guilty on another count. . . .  Indeed, courts recognize that inconsistent verdicts are often a product of jury lenity, which courts will not review."); <u>Bowden</u> v. <u>Keane</u>, 85 F. Supp. 2d 246, 251 n.6 (S.D.N.Y. 2000) ("'a jury is free to render inconsistent verdicts or to employ relevant evidence in convicting on one count that it may seem to have rejected in acquitting on other counts'"), <u>aff'd</u> 237 F.3d 125 (2d Cir. 2001); <u>Rust</u> v. <u>Eisenschmidt</u>, No. 97CV615, 2000 WL 33767757 at *3 (N.D.N.Y. June 8, 2000); <u>Dukes</u> v. <u>McGinnis</u>, 99 Civ. 9731, 2000 WL 382059 at * 12-13 (S.D.N.Y. Apr. 17, 2000) (Peck, M.J.); <u>see also</u>, <u>e.g.</u>, <u>Erdheim</u> v. <u>Greiner</u>, 22 F. Supp. 2d 291, 298 (S.D.N.Y. 1998); <u>Carr</u> v. <u>New York</u>, No. 97-CV-117, 97-CV-490, 1998 WL 178844 at *2 (E.D.N.Y. Feb. 13, 1998); <u>United States</u> v. <u>Anzellotto</u>, No. 93-CR-1316, 1995 WL 313641 at *3 (E.D.N.Y. May 9, 1995); <u>Billups</u> v. <u>Costello</u>, 91 Civ. 6296, 1992 WL 170650 at *4 (S.D.N.Y. July 6, 1992) ("As long as a conviction is the result of a fair trial at which legally sufficient evidence has been adduced, its inconsistency with another verdict does not create a constitutional defect."); <u>Savage</u> v. <u>Berbary</u>, No. CIV-90-290E, 1991 WL 147371 at *2 (W.D.N.Y. July 22, 1991) ("Alleged inconsistencies in state court verdicts are not a proper ground for federal habeas corpus intervention. . . ."); <u>United States</u> v. <u>Marcus Schloss & Co.</u>, No. 88 CR. 796, 1989 WL 153353 at *2 (S.D.N.Y. Dec. 11, 1989); <u>United States</u> v. <u>Stagnitta</u>, No. 87-CR-182, 1988 WL 46617 at *6-7 (N.D.N.Y. May 6, 1988); <u>United States</u> v. <u>Obayagbona</u>, 627 F. Supp. 329, 345 (E.D.N.Y. 1985).

offered the medical record into evidence (and the prosecutor agreed), Justice McLaughlin was not required to seek further authentication of the medical records.  (See page 6 n.6 above.)  Justice McLaughlin did not err in admitting a stipulated exhibit.  (See also page 55 above.)  Brown's claim that appellate counsel was ineffective for failing to argue that trial counsel was ineffective for not objecting to the trial court's admission of medical records should be DENIED.

### 4.     Trial Counsel Was Not Ineffective for Failing to Object that the Robbery and Assault Counts Were Improperly Joined

Brown claims that trial counsel should have objected that Justice McLaughlin prejudicially joined the robbery and assault counts.  (Dkt. No. 8: Danzig Aff. Ex. G: Brown Pro Se Coram Nobis Br. at 9-11.)  C.P.L. § 200.20(2)(a) provides that offenses can be joined when they "are based upon the same act or upon the same criminal transaction."  Here, both the robbery and assault charges arise from the same event, the July 9, 2002 attack of Eric Daniels.  (See pages 5-7 above.)  Trial counsel was not ineffective for failing to make a frivolous argument against joinder, nor was appellate counsel ineffective for not raising the claim.  Brown's claim should be DENIED.

*   *   *

All of Brown's habeas claims of appellate counsel's alleged ineffectiveness lack merit.  Moreover, Brown has not shown that the First Department's decision denying his ineffective appellate counsel claims was an unreasonable application of Strickland.  His ineffective appellate counsel habeas claim should be DENIED.

## CONCLUSION

For the reasons set forth above, Brown's habeas petition should be <u>DENIED</u> and a certificate of appealability should not be issued.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. <u>See also</u> Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard m. Berman, 500 Pearl Street, Room 650, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Berman (with a courtesy copy to my chambers). Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>Thomas</u> v. <u>Arn</u>, 474 U.S. 140, 106 S. Ct. 466 (1985); <u>IUE AFL-CIO Pension Fund</u> v. <u>Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993), <u>cert. denied</u>, 513 U.S. 822, 115 S. Ct. 86 (1994); <u>Roldan</u> v. <u>Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993); <u>Frank</u> v. <u>Johnson</u>, 968 F.2d 298, 300 (2d Cir.), <u>cert. denied</u>, 506 U.S. 1038, 113 S. Ct. 825 (1992); <u>Small</u> v. <u>Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989); <u>Wesolek</u> v. <u>Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir. 1988);

H:\OPIN\BROWN-LEROY

84

McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72, 6(a), 6(e).

Dated:          New York, New York
                May 8, 2008

                                        Respectfully submitted,

                                        _____
                                        **Andrew J. Peck**
                                        United States Magistrate Judge

Copies to:      Leroy Brown (Regular & Certified Mail)
                Jodi A. Danzig, Esq.
                Judge Richard M. Berman

H:\OPIN\BROWN-LEROY